DISBROW *et al. v.* THE WALSH BROTHERS.

(*District Court, S. D. New York.* October 22, 1888.)

1. MARITIME LIENS—SERVICES—SEAMEN—BRICK BARGE.
    A barge without sails or rudder, used for transporting brick, on which men are employed in loading, carrying, and delivering brick, is subject to a lien for wages of the men employed in such transportation as seamen.
2. SEAMEN—WAGES—HIRING BY MONTH—DESERTION BEFORE TRIP ENDED.
    Though the practice in this harbor upon hiring a seaman "by the month" in harbor navigation permits an employer to discharge, or the employed to leave, at the termination of any trip during the month on *pro rata* wages, neither can terminate the employment in the midst of a trip without legal cause. The employed having quit without leave, while the barge was discharging, the wages of that trip *held* forfeited.

In Admiralty. Libel for wages.
*Alexander & Ash,* for libelants.
*R. D. Benedict,* for claimant.

BROWN, J. The libelants sue for wages, and claim a lien as seamen on board the barge Walsh Brothers. The barge had no sails, masts, or rudder. She was used only for the transportation of brick. The libelants were hired for service on the barge, including loading and unloading, in transporting brick from Hackensack to New York and Brooklyn, at the rate of $35 per month; no further engagement for any definite period being agreed on. They made several trips between May 15 and June 19, 1888, and on the day last named, while the barge was discharging brick at Ninety-First street, New York city, they quit work on account of some dissatisfaction with the alleged language and behavior of the master.

The services of the men constitute a lien upon the barge, because she was a vessel engaged in the transportation of cargo. The men lived on board, and though their duties as respects navigation were slight, they did attend to all such duties as were incident to such trips when the barge was taken in tow by the tug; and they were not employed in any duties upon land excepting such as belonged to the loading and unloading of cargo. Such services are all maritime, and are attended by a lien upon the vessel. See *The Minna*, 11 Fed. Rep. 759, and note. The men were not discharged by the master; nor can I find that they left with his assent. He wished them to remain until the cargo was unloaded. Though their engagement was by the month, they did not thereby forfeit their pay for the fractional part of the second month, so far as they finished trips of the barge. In *Moore* v. *Neafie*, 3 Fed. Rep. 650, it was held by Judge CHOATE, upon proof of the local usage, that upon engagement of seamen at so much a month for service about the harbor of New York, the contract might be terminated at the end of any trip, and a *pro rata* recovery had. The right of the employer to discharge, or of the employed to quit, extends no further. It would be contrary to the manifest meaning and intention of such an employment that either party should be at liberty to terminate the agreement at any moment in the course of an uncompleted trip. *The City of New Orleans*, 33 Fed. Rep. 683. The causes assigned by the libelants for leaving in the midst of unloading do not amount to a justification. They were legally required to remain and finish the unloading. The chief part of their work was loading and unloading the cargo. To quit work as they did was to subject the barge to the liability of special expenses, whether she undertook to get other persons to supply the libelants' places, or undertook to discharge without their aid, and thereby lose two days' time. The libelants must, therefore, either suffer a deduction for the special damage, or forfeit any claim to wages for that trip. The former is all the deduction claimed by the respondent. The amount claimed is no more than his probable actual loss, and is less than the forfeiture of the wages for the trip would be. I deduct the lesser sum of $4.78 from each man. Judgment is allowed for the rest.