**DIOMEDE et al. v. LOWE et al.**

No. 7758.

District Court, E. D. New York.

March 30, 1936.

S. Joseph Corrao, of New York City (John F. O'Neil, of New York City, of counsel), for plaintiffs.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Clarence Wilson, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant Samuel S. Lowe.

E. C. Sherwood, of New York City (William B. Davis, of New York City, of counsel), for defendants Moran Bros. Contracting Co., Inc., and Travelers Ins. Co.

MOSCOWITZ, District Judge.

By their bill of complaint herein, plaintiffs apply to this court to set aside an order made by the Deputy Commissioner of the United States Employees' Compensation Commission for the Second Compensation District, rejecting plaintiffs' claim to compensation in a proceeding instituted under and pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

If not in accordance with law, a compensation order made by a Deputy Commissioner in such proceeding may be suspended or set aside, in whole or in part, through injunction proceedings mandatory or otherwise, brought by any party in interest against the deputy making the order, and instituted in the federal district for the judicial district in which the injury occurred. Section 21 of the act, 33 U.S.C.A. § 921. No question of procedure is involved here. Examination of the evidence adduced before the Deputy Commissioner indicates that there was substantial evidence sufficient to justify his findings of fact; the parties in interest concede the propriety of the findings in this respect. The sole question presented is whether under the facts found and reported by the Deputy Commissioner the deceased, Nicholas Diomede, comes within the coverage of section 3 of the aforesaid act (33 U.S.C.A. § 903). The Deputy Commissioner concluded that the deceased was the master of a vessel and ordered that the claim herein be rejected in view of the exception in subsection 1 of section 3 (a) of the act, 33 U.S.C.A. § 903 (a) (1), which provides that no compensation shall be payable in respect to the disability or death of a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under 18 tons net. Specifically, the point involved is whether Nicholas Diomede within the meaning of the act was "a master or member of a crew" of the scow upon which he was employed at the time he met his death.

The findings of fact by the Deputy Commissioner describe in some detail the duties of the deceased in this case. He had been in the employ of Moran Bros. Contracting Company, Inc., for about fifteen years prior to the date of his death, and during all that time had charge of the employer's dump scow Moran No. 18. The scow was without any means of self-propulsion, being towed from pier to destination by the employer's tugs, and was used to transport ashes, mud, and refuse from the piers within the harbor of New York to dumping grounds beyond the harbor limits. Diomede was the only person engaged on the scow, which was equipped with a cabin and bunk for his use. Except upon special privilege being granted, he was expected to remain on board the scow. He was compen-

sated at the rate of $1 per day whether the scow worked or not, and he received extra compensation to the maximum of $3 per day when the scow was loading or en voyage.

The duties of the deceased were to supervise the loading of the scow so that the cargo would be evenly distributed and the scow ride on even keel, to be watchful lest the scow became unseaworthy; and to make minor repairs to prevent the same, to pump out water which leaked into the barge, to unfasten the lines from the dock to the scow when voyages were begun, to make fast lines from the tow to the scow, to lengthen and shorten the lines between the tow and scow as necessary en route, and to tie up the scow to the dock upon its return from a voyage. He was likewise required to open and close the hatches of the scow, to dump the cargo upon its arrival at the dumping ground, to splice the lines when necessary, and to keep running lights in order and visible.

On the evening of July 25, 1934, the deceased left with the scow from pier 9 in the city of New York, and proceeded with another scow, both of which were under tow, out into the harbor. The intended destination was a point three miles outside of Scotland Lightship, which is beyond the harbor limits of the Port of New York. After rounding buoy No. 6 in Swash Channel, which is within the harbor limits, the captain of the tug, which had the barges under tow, signaled by means of blasts of the tug whistle to the captains of the barges to lengthen the lines between the tug and the scows. The deceased failed to respond to this signal and upon investigation he was found to be missing. His body was subsequently discovered, death having resulted from submersion.

Upon the foregoing facts, the Deputy Commissioner concluded that the deceased was "the master of a vessel which class of employees is excluded from the benefits of the Longshoremen's and Harbor Workers' Compensation Act." The Commissioner submitted no opinion to indicate the basis of his conclusion that the deceased was a master of a vessel; counsel for defendants have not cited any authorities or attempted to state any argument which might sustain his conclusion in this respect. I am of the opinion that this holding is not in accordance with law.

It is plain, of course, that Congress by its very choice of the words "master or member of a crew of any vessel" contained in the excepting clause of the act with which we are now concerned indicated its recognition of a distinction between the two groups mentioned. And clearly, no supportable reason can be advanced to justify the thought that Congress intended that the words so used were to be given an esoteric connotation in the sense that the commonly accepted distinction between the two groups should be ignored.

What, then, is a "master" of a vessel, as that term has always been understood? "He is," says Hobart, C. J., "the person entrusted with the ship and the voyage"; one who may implicitly raise certain liens upon the ship, and may even impawn the ship in case of extremities, for money to relieve against her distress. Bridgeman's Case, Hob. 11, 12, Moore, 918, S.C. He is one who, for his knowledge in navigation, fidelity, and discretion, has the government of his ship committed to his care and management, and the law looks upon him as an officer, who must render and give an account of the whole charge. Molloy, De. Jur. Mar. B. II. c. 2, § 1. "Few individuals," says Jacobsen, "in any relation, have so extended a mandatum praesumptum conferred upon them, as shipmasters." Jacobs, Sea Laws, B.I. c. 1, p. 82, of Balt.Ed. of 1818. The Lex Mercatoria Americana, p. 131, says a master of a ship is he to whom is committed the government, care, and direction of the vessel and cargo. The definition given by Prof. Wilson of the words maitre de navire is master, captain, or commander of a ship. Vide Wilson's French and English Dictionary—verbo maitre. Curtis, in his treatise on the Rights and Duties of Merchant Seamen, p. 161, states that "the master of a merchant vessel is that officer to whom is intrusted the entire command of the ship." And in one of the oldest treatises on the rights and duties of owners, freighters, and masters of ships, and of mariners (a copy of which is found in the appendix to the second volume of Peters' Admiralty Decisions), the powers and responsibility of a master of a vessel are thus defined (2 Pet.Adm. appendix lxxiv):

"A Master of a ship is no more than one, who for his knowledge in navigation, fidelity, and discretion, hath the government of the ship committed to his care and management, and by the common law, by which properties are to be guided, he hath no property either general or special, by the constituting of him a master; yet the law looks

upon him as an officer, who must render and give an account of the whole charge, when once committed to his care and custody; and upon failure to render satisfaction; and thereof if misfortunes happen, if they be either through negligence, wilfullness, or ignorance of himself, or his mariners, he must be responsible."

Unquestionably, the power and authority conferred upon and intrusted to the master of a vessel by the common, civil, and maritime law included the control and management and the government and discipline of the vessel (cf. Martin v. Farnsworth, 33 N.Y.Super.Ct. 246, wherein is contained a scholarly discussion of the subject). And this concept and understanding of supreme authority in the master of a vessel has not changed to this day. It would seem reasonably clear that when Congress enacts a maritime statute which makes reference to a "master or member of a crew of any vessel," then, aside from the question whether the persons so mentioned were only intended to come within a particular classification of seamen, it must at least be assumed that the word "master" refers to one possessed of the same power and authority which all masters of ships are generally known to have. So far as the excepting clause of the statute in question is concerned, the term "master," when coupled by the disjunctive "or" with the phrase "member of a crew," can only refer to one in such superior position; for, it is the very existence of the aforementioned power and authority in the master of any vessel which distinguishes him from all others employed upon the vessel.

Sufficient has been stated to show that the deceased, Nicholas Diomede, cannot be held to have been a "master" in any sense of that term. True, he was the sole person employed in connection with the Moran No. 18 and, in that respect, it may be said that the Deputy Commissioner correctly stated that he had charge of the vessel; but that would not make him "master" of the vessel within the proper meaning of the term. Diomede had no control over the navigation of the vessel; the evidence shows that the captain of the tug was at all times in command when the scow was in tow. He had no authority to employ any person to work on the Moran No. 18 or any other scow, or to discharge any person. At all times he was subject to the control and orders of another. At best, he was a mere deck hand.

Consideration of this aspect of the question may be concluded by a brief reference to The A. H. Chamberlain (D.C.) 206 F. 996, 998. There, one Doty filed a libel for wages against the scow A. H. Chamberlain, a squarebuilt scow without motive power or masts. The libelant signed himself as captain, receipted bills of lading, and generally acted as the owner's representative in whatever was necessary to be done upon the scow's trips. In other respects he was but a mere deckhand, and during the greater part of the time was the only person employed upon the scow for everything which had to be done. Judge Chatfield, holding that the libelant was not a master, stated:

"But the captain of a scow or barge, who does the work of a deckhand, and does not have the right to control the vessel's movements nor employment, and can act only as agent, in the sense that any sailor might act under specific direction of his captain, is not a master."

This language appositely applies to the facts in the instant case. And, indeed, it is to be noted that the libelant in that case was vested with more authority than the deceased herein was given. In De Wald v. B. & O. R. Co., 71 F.(2d) 810, 813, the Circuit Court of Appeals for the Fourth Circuit cited The A. H. Chamberlain in support of its conclusion that De Wald was not a master as that term is used in the excepting clause of the Longshoremen's and Harbor Workers' Compensation Act. That the court, without more, merely cited The A. H. Chamberlain to support its conclusion in the respect just mentioned would seem to be indicative of its opinion that Congress did not intend to use the word "master" in the excepting clause of the statute in any extraordinary sense. From the facts presented in the De Wald Case, hereinafter discussed, it is plain that the authority conferred upon the employee therein was not less than that conferred upon the deceased in the instant case.

The remaining question for determination is whether Diomede was "a member of a crew" of a vessel as those words are used in the Longshoremen's Act. He was the sole person working on the Moran No. 18 in any capacity. "Crew" is a collective noun and signifies the ship's company. De Wald v. B. & O. R. Co., supra. Referring to the connotation of the word "crew" as it is used in the statute under consideration, Judge Manton used the following language in the case of Seneca Washed Gravel Corporation v. McManigal (C.C.A.) 65 F.(2d) 779, 780:

"The word 'crew' is used in the statute to connote a company of seamen belonging to the vessel, usually including the officers. It is the 'ship's company.' U. S. v. Winn, 28 Fed.Cas. 733, No. 16,740. The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. The Bound Brook (D.C.) 146 F. 160, 164; The Buena Ventura (D.C.) 243 F. 797, 799."

In the light of this interpretation of the word "crew" it is apparent that one who is the sole person employed upon a scow cannot properly be considered a "member of a crew" of a vessel within the meaning of the statute. But it may be assumed, arguendo, that one may be the crew, the "ship's company," albeit he was its solitary member. Still, it cannot be said that the nature of the duties of the deceased were such as to bring him within the class of seamen which Congress intended to except from the benefits of the Longshoremen's Act. After a careful and comprehensive consideration of the legislative history of the act, the court in the De Wald Case concluded that Congress intended to except from the benefits of that act "only those persons ordinarily and generally considered as seafaring men, at least only those employed on board a vessel having a master and crew."

In the said case the duties of the deceased, as found by the Deputy Commissioner from the evidence, were described as follows:

"That in his employment as a bargeman, decedent's duties consisted of the checking and supervising the loading and unloading of cargo from barges to steamships and vice versa; seeing that the cargo was safely loaded and unloaded; making a record of all damaged freight; signing receipts for cargo loaded and unloaded; opening and closing hatches on barges and putting in gang-way boards; pumping water out of the barges, and making lines fast and unfast at docks or alongside vessels when the barges were moved about the harbor;

"That the deceased employee lived ashore; that he reported for work each morning at 8 o'clock to see whether he would be needed, but that he was not always given work, averaging about three days per week;

"That the barges on which the deceased was employed had no motive power, equipment or steering apparatus, being towed or pushed by tugboats; that their radius of operation was confined to Baltimore harbor; that when the barges were moved about the harbor and DeWald accompanied them on each such trip, which averaged one per day when working, he had duties to perform with respect to loading or unloading; that on such trips about the harbor DeWald was not responsible for the navigation of the barges and performed no duties in connection with such navigation except the incidental one of making lines fast and unfast, when tying up to dock or alongside vessel."

Upon the foregoing facts, the Circuit Court of Appeals held De Wald to be neither "master" nor "member of a crew" of a vessel within the meaning of those words under the statute. The following are portions of that court's opinion which are considered especially significant here:

"For certain purposes DeWald comes under the category of a seaman. Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589. But it does not follow that he was a seaman in the true sense of the word, one who engaged in voyages upon a ship or vessel and assisted in the navigation of the vessel and is exposed to the perils of the sea or in other words a seaman in the common acceptance of the meaning of the word. * * *

"It is to us reasonably clear that Congress intended to except from the benefits of the Longshoremen's Act only those persons ordinarily and generally considered as seafaring men, at least only those employed on board a vessel having a master and crew. It is significant that Congress did not use the term 'seaman' in section 3 of the act (33 U.S.C.A. § 903). It would, undoubtedly, have used that term had it intended to exclude from the benefits of the act all those who have been held by the courts to be seamen in the more liberal interpretation of the term.

"Obviously DeWald was not a master. The A. H. Chamberlain (D.C.) 206 F. 996. The judge below readily reached this conclusion. Nor in our opinion was he a member of a crew. He was the only man working on the barges in any capacity. 'Crew' is a collective noun and signifies 'the ship's company.' The Marie (D.C.) 49 F. 286; Seneca Washed Gravel Corporation v. McManigal (C.C.A.) 65 F.(2d) 779; United States v. Winn, 28 Fed.Cas. 733, No. 16,-740.

384

"DeWald was not a member of the crew within the fair and common meaning of the words used in the excepting clause when we interpret the clause as one intended to restrict rather than extend and when we consider the purposes and history of the legislation as well as the nature of his duties and the use of the barges upon which he was, from time to time, employed by the day."

The soundness of the entire opinion rendered by the Circuit Court of Appeals for the Fourth Circuit in the De Wald Case cannot be questioned. And concurrence with the views and conclusions therein set forth must, to my mind, lead to the result that the deceased herein, Nicholas Diomede, cannot be held to come within the exceptions set forth in the Longshoremen's Act. If the employee in the De Wald Case was not a seaman in the true sense of the word, namely, "one who engaged in voyages upon a ship or vessel and assisted in the navigation of the vessel and was exposed to the perils of the sea," then the deceased herein was not such a seaman. The differences between the duties of De Wald and the deceased herein were not so substantial as to place each in totally different classifications under the statute.

As the Deputy Commissioner erred in refusing to award compensation to the plaintiffs herein upon the ground stated in his order, an order may be presented herein setting aside the Deputy Commissioner's order and referring the matter back to him to make a further report not inconsistent with this opinion.

Settle order on notice.