NORTON, DEPUTY COMMISSIONER FOR THE THIRD COMPENSATION DISTRICT, *v.* WARNER COMPANY.

No. 362. Argued February 28, 29, 1944.—Decided March 27, 1944.

*Assistant Attorney General Shea,* with whom *Solicitor General Fahy* and *Mr. Melvin Richter* were on the brief, for petitioner.

*Mr. Samuel B. Fortenbaugh, Jr.,* with whom *Mr. Everett H. Brown, Jr.,* was on the brief, for respondent.

By special leave of Court, *Mr. Abraham E. Freedman,* with whom *Messrs. William L. Standard* and *E. Burke Finnerty* were on the brief, for the National Marine Engineers Beneficial Association et al., as *amici curiae,* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question in this case is whether Nicholas Rusin, a bargeman employed by respondent, is entitled to compensation under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424, 33 U. S. C. § 901) for injuries received when a capstan bar, which he was using to shift the barge at a pier, pulled out and struck him upon the chest and caused him to fall. The answer turns on whether Rusin was a "master or member of a crew of any vessel." If he was, he is not entitled to the compensation because such persons are expressly excluded from the coverage of the Act by § 2 (3) and § 3 (a) (1).

The Deputy Commissioner found that Rusin was a harbor worker, not a "master or member of a crew," and granted him a compensation award.[1] The District Court upheld the Deputy Commissioner in a suit which respond-dent-employer brought to set aside the award. 45 F. Supp. 835. The Circuit Court of Appeals reversed. 137 F. 2d 57. The case is here on a petition for a writ of certiorari which we granted because of the asserted failure of the court below to give proper effect to our decision in *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251.

---

[1] Cf. the finding of the Deputy Commissisoner in *Diomede* v. *Lowe,* 14 F. Supp. 380; 87 F. 2d 296.

The facts, as found by the Deputy Commissioner and amplified by additional evidence adduced before the District Court, are not in dispute. Rusin was employed as a boatman on a barge which at the time of the injury was afloat on the navigable waters of the United States. The barge had no motive power of its own and was moved either by towing or, for shorter distances, by the winding up of a cable by means of a capstan operated by hand. The barge, which was documented as a vessel of the United States, never went to sea but was confined in its operation to waters within a radius of thirty miles of Philadelphia. Rusin was employed under a union contract with respondent which stated that all bargemen assigned to specific barges in active operation were to be paid a monthly salary of $80 and were to be provided with quarters. It also stated that that compensation was "for all work performed by Bargemen in the operation of his own vessel" and that the rates provided were "based upon all services and time required to safeguard and operate the barge fleet, including necessary pumping, watching, or other emergency duties on Sundays and holidays." Rusin was continuously aboard. He bought his own meals and lived, ate, and slept on the barge. When he worked on any other boat, he received wages at an hourly rate, in addition to the monthly salary. Rusin had little experience as a seaman except that which he obtained as a bargeman. His duties consisted of taking general care of the barge. They included taking care of the lines at docks, tightening or slackening them as necessary; repairing leaks; pumping out the barge; taking lines from tugs; responding to whistles from the tugs; putting out navigational lights and signals; taking orders from the tugboat when being towed; moving the barge at piers by the capstan. He could not set the course or control or change it at any time. He was subject to orders of respondent's marine superintendent

except when in tow, at which time he was subject to the control of the tugboat captain. But he had no duties in connection with the handling of cargo and no shore duties. At the time of the injury he was the sole person aboard or employed upon the barge.

Sec. 19 (a) of the Act gives the Deputy Commissioner "full power and authority to hear and determine all questions in respect of" claims for compensation. And § 21 (b) gives the federal district courts power to suspend or set aside, in whole or in part, compensation orders if "not in accordance with law." In considering those provisions of the Act in the *Bassett* case, we held that the District Court was not warranted in setting aside such an order because the court would weigh or appraise the evidence differently. The duty of the District Court, we said, was to give the award effect, "if there was evidence to support it." 309 U. S. at 258. And we stated that the findings of the Deputy Commissioner were conclusive even though the evidence permitted conflicting inferences. *Id.* p. 260. And see *Parker* v. *Motor Boat Sales*, 314 U. S. 244, 246. This statement of the finality to be accorded findings of the Deputy Commissioner under the Act was not new. It had been stated in substantially similar terms in *Voehl* v. *Indemnity Insurance Co.*, 288 U. S. 162, 166, and in *Del Vecchio* v. *Bowers*, 296 U. S. 280, 287. The rule fashioned by these cases followed the design of the Act of encouraging prompt and expeditious adjudication of claims arising under it.[2]

---

[2] Sec. 14 (b) makes the first instalment of compensation due on the fourteenth day after the employer has knowledge of the injury or death. Sec. 14 (f) provides that if compensation, payable under an award, is not paid within ten days after it is due, a penalty of twenty per cent is added. Sec. 18 provides for the issuance by the Deputy Commissioner of a supplementary order when an employer is in default of payment of compensation due under an award for a period of thirty days. On such an order judgment and execution may be obtained in the federal district courts, the supplementary order of the Deputy

By giving a large degree of finality to administrative determinations, contests and delays, which employees could ill afford and which might deprive the Act of much of its beneficent effect, were discouraged. Thus it is that the judicial review conferred by § 21 (b) does not give authority to the courts to set aside awards because they are deemed to be against the weight of the evidence. More is required. The error must be one of law, such as the misconstruction of a term of the Act.

We think the award granted by the Deputy Commissioner had such an infirmity.[3]

If the award were to stand, there would be brought within the Act a group of workers whom we do not believe Congress intended to include. The Senate Report makes clear that "The purpose of this bill is to provide for com-

---

Commissioner being final. Any waiver of the right to compensation under the Act is made invalid by § 15 (b). Agreements for compensation not made in accordance with the Act are outlawed. §§ 15 (a), 16. Limitations on the granting of interlocutory injunctions staying payment of compensation while an award is being contested are contained in § 21 (b). And the United States Attorney is directed to appear on behalf of the Deputy Commissioner and defend compensation orders. 45 Stat. 490, 33 U. S. C. § 921a.

[3] In *Davis* v. *Department of Labor*, 317 U. S. 249, we were dealing with the problem of determining whether a so-called harbor worker could be compensated under a state act or must come under the Longshoremen's and Harbor Workers' Act. That problem was embarrassed by the fact that the line between federal and state domain had been drawn with reference to the rule of the *Jensen* case. There are no such complications here. In this case the line is one which Congress has drawn between two mutually exclusive federal systems. The risk of employees choosing the wrong remedy has been anticipated by Congress and at least partially avoided. For § 13 (d) provides that where recovery is denied to any person in a suit brought at law or in admiralty to recover damages on the ground that his remedy was under the Longshoremen's and Harbor Workers' Act the limitation of time for making application for an award begins to run "only from the date of termination of such suit."

pensation, in the stead of liability, for a class of employees commonly known as 'longshoremen.' These men are mainly employed in loading, unloading, refitting, and repairing ships." S. Rep. No. 973, 69th Cong., 1st Sess., p. 16. We reviewed the history of the Act in the *Bassett* case and in the *Parker* case, and more recently in *Davis* v. *Department of Labor*, 317 U. S. 249. As we noted in those cases, the Act was adopted to meet the difficulties engendered by the decision in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. And see *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Washington* v. *W. C. Dawson & Co.,* 264 U. S. 219. That line of cases carved out a domain in which, according to a majority of this Court, state law could not constitutionally afford compensation to maritime employees. It was to fill that gap in the system of workmen's compensation that the present Act was passed. S. Rep. No. 973, *supra,* p. 16. But as we pointed out in the *Bassett* case (309 U. S. pp. 256–257) the effort to bring a master and members of a crew of a vessel under the Act was successfully opposed by the representatives of maritime employees. See *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U. S. 128, 136; *Warner* v. *Goltra,* 293 U. S. 155, 159–160. And the maritime unions which appeared as *amici curiae* in the present case emphasize the importance of that exception. The liability of an employer under the Act is exclusive. § 5. On the other hand, those who are not covered by it but who are protected by maritime law are entitled to maintenance and cure, a remedy not restricted to accidents. As we said in *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724, 732, "In this respect it is a broader liability than that imposed by modern workmen's compensation statutes." Moreover, seamen may sue under the Jones Act (41 Stat. 988, 1007, 46 U. S. C. § 688) for injuries in the course of their employment. And in such actions assumption of risk is no defense. *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424. Or suit

may be brought in admiralty for injuries caused by unseaworthiness of the vessel or its appurtenant appliances and equipment. *Mahnich* v. *Southern Steamship Co.,* 321 U. S. 96, and cases cited. These are basic rights. The maritime unions appearing in the present case maintain that those remedies are indeed superior to the relief afforded by the Longshoremen's and Harbor Workers' Act. Whether they are more desirable than a system of compensation is not for us to determine. But where Congress has provided that those basic rights shall not be withheld from a class or classes of maritime employees it is our duty on judicial review to respect the command and not permit the exemption to be narrowed whether by administrative construction or otherwise.

If a barge without motive power of its own can have a "crew" within the meaning of the Act and if a "crew" may consist of one man, we do not see why Rusin does not meet the requirements. A barge is a vessel within the meaning of the Act even when it has no motive power of its own, since it is a means of transportation on water.[4] See *The General Cass,* Fed. Cas. No. 5,307; *Seabrook* v. *Raft,* 40 F. 596; *In re Eastern Dredging Co.,* 138 F. 942; *Los Angeles* v. *United Dredging Co.,* 14 F. 2d 364; *The Robert W. Parsons,* 191 U. S. 17, 30; *Ellis* v. *United States,* 206 U. S. 246, 259. A crew is generally "equivalent to ship's company" as Mr. Justice Story said in *United States* v. *Winn,* Fed. Cas. No. 16,740, 28 Fed. Cas. 733, 737. But we pointed out in the *Bassett* case that the word does not have "an absolutely unvarying legal significance." 309 U. S. at p. 258. We know of no reason why a person in sole charge of a vessel on a voyage is not as much a "member of the crew" as he would be if there were two or more aboard. We said in the *Bassett* case

---

[4] "Vessel" is defined in Rev. Stat. § 3, 1 U. S. C. § 3, to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

that the term "crew" embraced those "who are naturally and primarily on board" the vessel "to aid in her navigation." *Id.,* p. 260. But navigation is not limited to "putting over the helm." It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can "hand, reef and steer." Judge Hough pointed out in *The Buena Ventura,* 243 F. 797, 799, that "every one is entitled to the privilege of a seaman who, like seamen, at all times contributes to the labors about the operation and welfare of the ship when she is upon a voyage." And see *The Minna,* 11 F. 759; *Disbrow* v. *Walsh Bros.,* 36 F. 607, 608 (bargeman). We think that "crew" must have at least as broad a meaning under the Act.[5] For it is plain from the amendment exempting a "master or member of a crew" that ship's company was not brought under the Act. And we are told by the Senate Report, as already noted, that the purpose of the legislation was to provide compensation for those who "are mainly employed in loading, unloading, refitting, and repairing ships." S. Rep. No. 973, *supra.*

Rusin, unlike the employee in the *Bassett* case,[6] did no work of the latter variety. He performed on the barge functions of the same quality as those performed in the maintenance and operation of many vessels. His were indeed different from the functions of any other "crew" only as they were made so by the nature of the vessel and its navigational requirements. The contract under which he was employed stated that the compensation was "based upon all services and time required to safeguard and operate the barge fleet." The services rendered con-

---

[5] "Seaman" as used in a particular context may of course have a broader meaning than "crew." *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50. And see *Carumbo* v. *Cape Cod S. S. Co.,* 123 F. 2d 991.

[6] And see *Moore Dry Dock Co.* v. *Pillsbury,* 100 F. 2d 245; *Henderson* v. *Jones,* 110 F. 2d 952.

formed to that standard and no other. Rusin moreover had that permanent attachment to the vessel which commonly characterizes a crew. See *A. L. Mechling Barge Line* v. *Bassett,* 119 F. 2d 995.

We conclude that only by a distorted definition of the word "crew" as used in the Act could Rusin be restricted to the remedy which it affords and excluded from recovery under the Jones Act or be denied relief in admiralty. See *Maryland Casualty Co.* v. *Lawson,* 94 F. 2d 190; *Loverich* v. *Warner Co.,* 118 F. 2d 690; *Cantey* v. *McLain Line,* 32 F. Supp. 1023, 114 F. 2d 1017, which we reversed in 312 U. S. 667.

*Affirmed.*

MR. JUSTICE ROBERTS concurs in the result.