LONG ISLAND R. CO. v. LOWE (GALLAGHER et al., Intervenors).

No. 50.

Circuit Court of Appeals, Second Circuit.

Nov. 24, 1944.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., for appellant Lowe.

Barry, Wainwright, Thacher & Symmers, of New York City, for appellants Frank and John Gallagher.

Joseph M. Brush and Edwin K. Reid, both of New York City, of counsel, for appellants.

Louis J. Carruthers, of New York City (David J. Mountain, Jr., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Leo Francis Gallagher, an employee of the Long Island Railroad Company, was drowned on October 1, 1941, when he fell from the bow of a carfloat that was being docked by the tug Cutchogue at one of the company's terminals in Long Island City. The decedent's father and infant brother made claim against the company for death benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S.C.A. § 901 et seq.; and the company, which was a self-insurer, defended on the ground that its employee was a member of the crew of the tug when he met his death and as such was excepted from the .coverage of the Act by section 3(a) (1), 33 U.S. C.A. § 903(a) (1). Evidence was taken by the Deputy Commissioner upon this issue and findings of fact were made from which he concluded that the decedent was not a "member of a crew of any vessel" within the meaning of the Act; he therefore made a compensation award in favor of the claimants. Thereafter the present suit was brought against the Deputy Commissioner to set aside the award. The claimants were allowed to intervene as defendants and, after issue joined, each side moved for summary judgment. In conformity with his opinion reported in 50 F.Supp. 944, the district judge granted the plaintiff's motion. From the judgment entered thereon the defendants have appealed.

The sole issue presented, both in the district court and here, is whether the decedent was a "member of a crew of any vessel" within the meaning of the statutory exception. The findings of the Deputy Commissioner relevant to that issue are set out in the margin.[1] We accept them in full, for they are amply supported by the evidence; but the conclusion that the facts so found bring the decedent within the coverage of the Compensation Act presents a question of law open to judicial review. Warner Co. v. Norton, 3 Cir., 137 F.2d 57, 59, affirmed 321 U.S. 565, 569, 64 S.Ct. 747,

[1] These findings read as follows: " * * * that for a period of 189 days preceding his death on October 1, 1941, deceased herein had been employed by the employer in various capacities incidental to the transfer of freight in and about the harbor of New York; that during the said period, he worked principally aboard the employer's tugs and car-floats; that he had no permanent assignment to any vessel, and during the said period had been assigned as a float-man 117 days, as a bridgeman 14½ days, deck-hand aboard tugs 15½ days, mate aboard tugs 13 days, and to unclassified employment aboard tugs and car-floats 25 days; that he lived ashore, was not furnished meals aboard vessels upon which he worked, was paid by the day on the basis of an eight hour day's employment and was not required to have a license of any kind nor articles of seamanship; that none of the vessels upon which he was employed operated outside the limits of New York harbor; that on October 1, 1941, he was assigned to the tug 'Cutchogue' as mate; that the tug was used to tow and transfer car-floats about the harbor; that the crew of the tug, in addition to the deceased, consisted of the captain, engineer, oiler, fireman, deckhand and float-man; that the captain was in charge of the navigation and operation of the said vessel and the only one licensed to pilot it; that the mate, who on this occasion was the deceased, handled the deck-line when undocking, cleaned the brass and floor of the pilot-house, spliced the ropes, and when the floats were being docked he stood on the bow of the float to signal the captain of the tug in the pilot-house in regard to the vessel's movements, and handled the lines of the float; that he could and did pilot the vessel when the captain was present, but was not permitted by law to pilot in the captain's absence; * * * * ".

Briefly summarized the basic facts are that the decedent had been in the employ of the railroad for about six months, working in various capacities incidental to the transfer of freight in and about the harbor. Occasionally he worked ashore as a bridgeman, some days he was assigned to duty on a tug, and the greater part of the period of his employment he had worked as a floatman. About a week before the fatal accident he had been assigned to the tug Cutchogue as first deck hand or "mate". As "mate" he handled the deck-line when undocking, cleaned the brass and the floor of the pilot house, spliced the ropes, and when docking stood on the bow of the float to give signals to the captain of the tug; and at times he steered the tug with the captain present, although he was not permitted by law to steer in the captain's absence. "But navigation is not limited to 'putting over the helm'", as the Supreme Court said in the Norton case, 321 U. S. at page 572, 64 S.Ct. at page 751. In the light of that decision we can entertain no doubt that the decedent would have been regarded as a member of the tug's crew had he been steadily employed as he was on the day he was drowned. The appellants, however, urge that the character of his employment cannot be properly determined unless his work during the entire period of his employment be taken into consideration, and that it was on this basis the Deputy Commissioner reached his conclusion that the decedent was a longshoreman rather than a member of the crew. In this we think error in a matter of law was committed. The employee's duties on the day of the accident are the critical facts which should determine his status as a member of the tug's crew. It is true that if he had been called aboard for a single act of service, he might not become a member of the crew. But on the days when his employer assigned him to serve as "mate" of the vessel, we hold that he was a crew member, although he might cease to be one on days when he was assigned for other duties. We can perceive no reason in the words or purpose of the Compensation Act for lumping an employee's activities over the period of his employment and classifying him according to the greater number of days on which he was either seaman or longshoreman. As the court said in South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732, the question concerns the employee's "actual duties". On the day in question the dece-

dent's duties pertained to the operation and welfare of the tug during her navigation. The case seems to be one of first impression. We think the district judge decided it correctly.

Judgment affirmed.