**EARLY v. AMERICAN DREDGING CO.**
(two cases).

Civ. A. No. 11124, No. 143 of 1950
in Admiralty.

United States District Court
E. D. Pennsylvania.

Nov. 15, 1951.

394

Milton M. Borowsky, Philadelphia, Pa., for libellant.

J. B. H. Carter, Philadelphia, Pa., for respondent.

McGRANERY, District Judge.

## Findings of Fact

1. The plaintiff-libellant, William J. Early, was employed as a deck hand on the dredge Commodore, a bucket type dredge owned and operated by the defendant, for a period of four months prior to March 6, 1950.

2. The dredge was owned and operated by the defendant upon navigable waters to deepen docks, wharves and channels in and about the Delaware River.

3. As a deck hand Early took orders from the captain and the mate; he assisted in moving the dredge by means of its "spuds", handled lines between the tug and dredge for towage purposes, assisted in moving the dredge by means of lines to the shore, handled lines to scows, upped scow pockets, repaired and oiled deck machinery, repaired and spliced dredging equipment and scow pocket cables, washed down the deck, painted and scraped, brought supplies aboard, handled channel and range lights, stood lookout to line up the dredge with the cut to be followed in the dredging operation, and performed other services essential to the maintenance and use of the dredge in dredging operations.

4. Early worked an eight-hour shift, was paid an hourly wage, signed no ship's articles, was not required to have and did not have seaman's papers. Although he was entitled to eat and sleep aboard, he slept ashore and took only the noon meal aboard.

5. On March 6, 1950, the dredge Commodore was tied alongside another dredge in the Delaware River, a part of the navigable waters of the United States, undergoing routine repairs preparatory to engaging in regular dredging operations on the following day. Early was assisting with the removal of the main steam pipe in the boiler room. The line measured ten feet in length and ten inches in diameter, and ran fore and aft above the top and center of the boiler, from seven to eight and one-half feet above the boiler room deck. One end of the pipe was bolted at a flange connection to a stop valve above the boiler approximately seven feet from the deck and a like distance inboard from the side of the boiler. Twelve bolts secured the connection. Early was assisting with the removal of the bolts. The captain of the dredge was present and in direct charge of the operation. Early and another employee removed all but one bolt, which was jammed in the pipe flange because the bolt holes were out of line. To loosen this bolt, the captain instructed Early to insert a spud wrench into one of the bolt holes and shake the pipe, in order to realign the bolt holes. At the time the order was given to him, Early was standing astride the rounded metal surface of the boiler, which measured between ten and twelve feet in diameter, with one foot resting on the lower dog of a manhole plate and the other on the side of the boiler. Early inserted the tapered end of his spud wrench in a bolt hole and, with both hands on the wrench, started to shake the pipe. The end of the wrench slipped out of the bolt hole, causing him to fall backwards down to an opening in the deck and to sustain the injuries complained of.

6. The plaintiff was inexperienced in this work, and was justified in following the orders of the Captain literally. In the circumstances, the Captain was negligent in directing the removal of the bolt in an improper manner in view of the plaintiff's precarious position.

7. In falling, the plaintiff-libellant struck his head against a steel ladder and lacerated his scalp, requiring six sutures to close the wound. He suffered sprains of the neck, left shoulder joint, lumbo-sacral area, traumatic coccyodynia, and a sprain of the right third metacarpo-phalangeal joint. As a result of these injuries, he was under treatment and unable to work from March 6, 1950, to May 4, 1950. He has continued to suffer some residual effects from these injuries.

8. Plaintiff's earnings in the two months preceding the accident averaged $60 per week.

9. The daily rate of maintenance and cure to which libellant is entitled during his fifty-nine day period of disability has been stipulated by counsel to be $6 per day.

## Discussion

The principal issue in this case is whether the plaintiff-libellant was at the time of his injury a member of the crew of a vessel. If, as an employee aboard defendant's dredge, he was a member of the crew of a vessel, he may maintain this action under the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688, and this libel for maintenance and cure under the maritime law; otherwise, his exclusive remedy is under the Longshoremen's and Harborworkers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq.

There can be no doubt that the dredge is a vessel. "Vessel" is defined in R.S. § 3, 1 U.S.C. § 3, to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." A dredge is a vessel within the Compensation Act, even when it has no motive power of its own, since it is a means of transportation on water. Cf. Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430.

But whether plaintiff-libellant was a member of the crew of the dredge requires the evaluation of the facts of his employment against the legal criterion of membership in a crew. In South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, crew members were defined as those persons who are on board naturally and primarily to aid in navigation. "But navigation is not limited to 'putting over the helm'. It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can 'hand, reef and steer'. * * * '[E]very one is entitled to the privilege of a seaman who, like seamen, at all times contribute to the labor about the operation and welfare of the ship when she is upon a voyage.'" Norton v. Warner Co., supra, 321 U.S. at page 572, 64 S.Ct. at page 751, 88 L.Ed. 430. "It is most important to note that one is aiding in navigation even though he happens to be a cook or an engineer. The whole ship's company is aiding in navigation." Carumbo v. Cape Code S. S. Co., 1 Cir., 123 F.2d 991, 995.

From the authorities it is apparent that aiding in the navigation of a vessel means assisting in some way in the forwarding of its enterprise, whether it be carrying passengers or freight, or dredging, and that one who has a more or less permanent connection with the vessel may be a member of the crew whether he is a helmsman, bartender or dredge worker. Norton v. Warner Co., supra; Gahagan Construction Corp. v. Armao, 1 Cir., 165 F.2d 301; Long Island R. Co. v. Lowe, 2 Cir., 145 F.2d 516; Schantz v. American Dredging Co. 3 Cir., 138 F.2d 534; Maryland Cas. Co. v. Lawson, 5 Cir., 94 F.2d 190; Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670. See also Pariser v. City of New York, 2 Cir., 146 F.2d 431, 433: "It is well settled that such an employee working on a dredge is a seaman entitled to sue under the Jones Act * * *." The facts that the plaintiff-libellant did not live aboard the dredge, ate his morning and evening meals at home, signed no ship's articles, worked an eight-hour day, received overtime pay, and was not required to and did

not have seaman's papers, do not conclusively bar him from status as a member of the crew. Daffin v. Pape, 5 Cir., 170 F.2d 622, and cases cited in footnote 1, page 625; Kibadeaux v. Standard Dredging Co., supra; Schantz v. American Dredging Co., supra; Gahagan Const. Corp. v. Armao, supra; Long Island R. Co. v. Lowe, supra. The composite picture of plaintiff-libellant's duties as detailed in the findings of fact, indicates that the purpose of his presence on board the dredge was to further the operation of the vessel in the accomplishment of its chief objective, namely: dredging. The Court, therefore, finds that plaintiff-libellant was a member of the crew of the vessel, and is entitled to maintain an action under the Jones Act, as well as an action for maintenance and cure under the maritime law.

## Conclusions of Law

1. The Court has jurisdiction over the parties and the subject-matter of this suit.

2. The Dredge Commodore is a vessel; plaintiff-libellant was aboard her in aid of navigation, performing duties essential for the purposes of the vessel, and was a member of the crew of the vessel, entitled to bring an action to recover damages for the personal injuries he suffered during the course of his employment, under the provisions of the Jones Act, and an action for maintenance and cure under the maritime law.

3. The proximate cause of the injuries and damages sustained by the plaintiff was the negligence of the captain in ordering the plaintiff to perform the work in an improper manner and under circumstances which render its performance unsafe.

4. The plaintiff was not guilty of contributory negligence in following out the orders of his superior.

5. The plaintiff is entitled to recover the sum of $1800 in damages, for loss of wages and pain and suffering.

6. In addition, the libellant is hereby awarded fifty-nine days' maintenance and cure, in the amount of $354.