WATKINS, Judge.
Jerry A. Landry and Elizabeth Hebert Landry brought an action in negligence under the Jones Act and for unseaworthiness under the General Maritime Law against John E. Graham and Sons, Inc., and its insurer, Midland Insurance Co. Landry seeks to be accorded seaman status under the Jones Act, 46 U.S.C.A. § 688. Defendants moved for summary judgment finding Landry not to have been a seaman for Jones Act purposes. Plaintiffs moved for partial summary judgment finding Jerry Landry to have been a seaman. The trial court found that there was no genuine is *277 sue of material fact (LSA-C.C.P. art. 966), and that Landry was a seaman for Jones Act purposes. Defendants appealed. We affirm.
Landry had been employed by John E. Graham and Sons from 1979 until 1984, in a job the company titled port captain, a position subordinate to the senior port captain. The vessels were moored at Berwick and Morgan City, Louisiana. While Landry was performing his duties aboard the M/V SEAN G., he slipped and fell, and allegedly sustained injuries for which he alleges he is entitled to recovery under the Jones Act.
John E. Graham and Sons owns or operates a fleet of some eighty vessels chartered by various petroleum companies, of which some eighteen or twenty are at Morgan City-Berwick at any given time. The home port of the vessels is Bayou LaBatre, Alabama.
Defendants contend that it is clear from the facts that plaintiff is a harbor worker and not, therefore, a seaman. As a result defendants argue that they are entitled to judgment decreeing plaintiff not a seaman, as a matter of law.
Landry would regularly pilot or captain the vessels himself; he would pilot the vessels that were going on jobs to the fuel dock to fuel them and to put the necessary water and supplies on them. On two occasions he flew offshore to pick up boats and pilot them back to the dock because the captain or the crew were incapable of operating the vessel. He would fly offshore and board Graham’s vessels to make inspections and give safety meetings. If one of Graham’s vessels would be in distress by running aground or having a rope in its wheels, Landry would captain another of Graham’s vessels to the distressed vessel to tow it back; he would also act as a pilot to Graham vessels coming up the river. Landry also piloted vessels from Morgan City to Houma, Louisiana on two or three occasions.
Part of Landry’s responsibilities were to witness all crew changes onboard the vessels; to sound the fuel tanks; to check the log books; to obtain transfers and to get a repair list from the departing crew. He was responsible for performing various repairs onboard the vessels; loading and unloading groceries from the vessels; bringing supplies to the vessels; and taking sick or injured employees to the doctor or hospital.
Landry had an onshore office with a desk. However he first, after leaving home each morning at 6:00 o’clock, went to the docks to perform his duties with any John E. Graham and Sons’ vessels docking, and only later in the day went to his office to dispatch an electrician or a mechanic, should one be needed aboard a vessel. Landry returned home each night. Usually he spent some five hours aboard ship each day.
The history of recovery as afforded by the Jones Act is well and clearly set forth in Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986), which stated as follows:
“The Jones Act grants its liberal remedies to ‘any seaman.’ This term is not defined in the Act, and in the years immediately following the passage of the Jones Act it was given an expansive interpretation by the Supreme Court. In International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), the Supreme Court held that ‘seaman’ included longshoremen when they were employed in maritime work on navigable waters. 272 U.S. at 52, 47 S.Ct. at 19. The next year Congress passed the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. § 901, et seq. (LHWCA), which provides a compensation remedy for all maritime workers injured on navigable waters, except those employees who are ‘a master or member of a crew of any vessel.’ 33 U.S.C. § 902(3)(G). Thus, the coverage of the Jones Act is narrowed by the LHWCA. The LHWCA limits the broad term ‘seamen’ so that only ‘member[s] of a crew of a vessel’ are exempted and permitted to be covered by the Jones Act. Just what the term ‘member of a crew of a vessel’ signifies, however, is a question with which the Supreme Court grappled from 1940 until 1958, and which has concerned the circuit courts ever since.
*278 “The first real attempt by the Supreme Court to define the term ‘member óf a crew’ in order to determine the scope of the Jones Act was South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), a suit for the death of an employee who had worked on a lighter used for fueling steamships. The decedent’s primary job was to facilitate the passage of coal from the lighter to the steamship. On occasion he threw lines and cleaned the lighter. The court observed that whether an individual is a member of a crew is a question to be left to the trier of fact, and concluded that ‘[t]he word “crew” does not have an absolutely unvarying legal significance.’ Id. at 258, 60 S.Ct. at 548. The court went on to state:
“[The LHWCA] as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen [citing International Stevedoring Co. v. Haverty ] were still regarded as distinct from members of a ‘crew.’ They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation.
“309 U.S. at 260, 60 S.Ct. at 549. Since the employee’s duties had little to do with navigation, the Supreme Court concluded that he was not a member of the crew and thus was covered by the LHWCA. This restrictive approach to the seaman-status question was to be relaxed by later cases.
“The next case to consider the status question was Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944). The trial court found a bargeman who lived aboard the barge, and whose duties included pumping, tying and untying lines, putting out navigational lights, and assisting while the barge was in tow to be a harbor-worker, not a member of the crew. The Court of Appeals reversed, and the Supreme Court affirmed the reversal. In reaching this decision, the Court repeated the Bassett statement that the term ‘crew’ embraces individuals who are naturally and primarily on board the vessel to aid in her navigation, but went on to explain that:
“[Navigation is not limited to ‘putting over the helm.’ It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can ‘hand, reef and steer.’ Judge Hough pointed out in the Buena Ventura that ‘everyone is entitled to the privilege of a seaman who, like seamen, at all times contribute to and labor about the operation and welfare of the ship when she is upon a voyage.’ We think that ‘crew’ must have at least as broad a meaning under the Act.
“321 U.S. at 572, 64 S.Ct. at 751 (footnotes and citations omitted). Of particular significance for our discussion today is one of the final lines of this opinion, which states, ‘[Plaintiff] moreover had that permanent attachment to the vessel which commonly characterizes a crew.’ Id. at 573, 64 S.Ct. at 751.
“The next case of significance for our analysis is Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955), an action for death of a worker assigned to a submersible drilling barge who was killed while helping to unload pipe from an adjacent cargo barge. The testimony concerning the employee’s duties was undisputed. A jury found the employee to be a crew member, and the district court entered a judgment on the verdict in plaintiff’s favor. This circuit reversed, concluding that, on undisputed facts, the status question was one of law to be resolved by the judge. Texas Company v. Gianfala, 222 F.2d 382, 386 (5th Cir.1955). We concluded that the drilling barge was not in navigation and that the decedent was on board as a member of a drilling crew, not as a member of a ship’s crew. Id. at 387. The Supreme Court disagreed with our conclusion and, without explanation, reversed and remanded with directions for the district court to reinstate its judgment. 350 U.S. at 879.
“Next came Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1
*279 L.Ed.2d 404, (1957) in which the plaintiff was hired to splice rope, stow supplies, and in general clean and maintain an anchored dredge barge. An Illinois state court jury found that the plaintiff was a seaman; an Illinois appellate court reversed this finding holding that there was insufficient evidence from which to find the plaintiff to be a crew member. The Supreme Court granted certiorari and reversed, stating that on these facts it was a reasonable inference that the plaintiff was responsible for the barge’s seaworthiness. 352 U.S. at 372-73, 77 S.Ct. at 416-17. More significantly, the court stated: ‘Our holding [in South Chicar go Coal & Dock Co. v. Bassett ] that the determination of whether an injured person was a “member of a crew” is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact.’ 352 U.S. at 374 [77 S.Ct. at 417]. Since the plaintiff performed almost all of his duties on or on behalf of the dredge, the Supreme Court considered him to be ‘permanently attached to and employed by the dredge as a member of its crew.' Id. at 372, 77 S.Ct. at 417. This meant that there was sufficient evidence to support a jury finding of crew member status.
“Two brief per curiam opinions ended the Supreme Court’s consideration of the crew member status issue. The first of these, Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958), involved a piledriver who assisted in the completion of a ‘Texas tower,’ a radar relay installation similar to a fixed drilling platform, while it was being constructed in a shipyard. Grimes lived on the tower and kept its equipment in operating condition while it was being towed out to its location at sea. After the tower reached its location and was anchored, the plaintiff Grimes performed only piledriving duties. Six days later, he was injured while returning from a trip from a nearby barge to the tower. Grimes contended that he was a member of the crew of the barge, the Texas tower, or both. The court of appeals held that Grimes was not a crew member as a matter of law; the Supreme Court reversed without explanation, citing Senko, Gianfala, and Bassett for the proposition that there was sufficient evidence to send the status issue to the jury. In the second case, Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958), the decedent performed odd jobs for the defendant around the defendant’s wharf, barge and tug, all of which were on the Mississippi River. The tug had been out of navigation for some months before the decedent’s death, and immediately before his accident the decedent had apparently been readying the tug for inspection and return to river service. The day of the accident he had been cleaning its boilers. The Supreme Court again held, without explanation, that whether the decedent was a Jones Act crew member was a jury question. 356 U.S. at 271, 78 S.Ct. at 735. With this 1958 decision the Supreme Court ended, for all practical purposes, its consideration of the Jones Act status issue.
“Prior to 1958 this circuit had utilized a test originated by the first circuit in Carumbo v. Cape Cod S.S. Co., 123 F.2d 991 (1st Cir.1941), and adopted in McKie v. Diamond Marine Co., 204 F.2d 132 (5th Cir.1953): ‘The essential and decisive elements of the definition of a “member of a crew” [are] that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation.’ 204 F.2d at 136. By 1959, however, the intervening Supreme Court decisions in Gianfala, Grimes and Butler called for a reevaluation of this test, and this our court undertook in Offshore Company v. Robison [266 F.2d 769 (5th Cir.1959) ]. Robison was a roughneck permanently assigned to a drilling rig mounted on a barge in the Gulf of Mexico. He was injured while attempting to escape from a runaway section of casing. 266 F.2d 771-72. Robison sued his employer, contending that he was a member of the crew of the barge on which he was injured. A jury agreed with these contentions. Id. at 773 n. 4. On appeal, the panel, speaking through Judge Wisdom, surveyed the Supreme Court cases and other jurisprudence, and concluded:
*280 “[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
“266 F.2d at 779. This test does not include the ‘aid-to-navigation’ language which appeared in the McKie test and the early Supreme Court decisions. Explaining the omission, the opinion stated:
‘Our review of the cases shows this test has been watered down until the words have lost their natural meaning.... we attach less importance to either of these catchphrases than we do to the cases piled on cases in which recovery is allowed when by no stretch of the imagination can it be said that the claimant had anything to do with navigation and is a member of the ship’s company only in the sense that his duties have a connection with the mission or the function of the floatable structure where he was injured.’
“Id. at 780. Robison also emphasized that the Supreme Court cases outlined above had already made clear that the status determination was, like any other factual determination, generally to be entrusted to the jury:
“[The terms ‘seaman,’ ‘vessel,’ and ‘member of a crew’] have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.
“266 F.2d at 779-80 (footnotes omitted).
“Robison distilled a test from the existing. meager Supreme Court authority on the subject and the Supreme Court has not directly addressed the issue since. For over twenty-five years, since 1959, the Ro-bison test has stood in this circuit as the test for whether the status question should go to the jury, and also for the corollary question, whether the evidence of crew member status is sufficient to support a jury verdict. It has been cited more than ninety-five times, relied on in innumerable other unpublished circuit and district court opinions, and considered a lighthouse by both plaintiffs’ and defendants’ counsel in compromise negotiations.
“The many circuit and district court opinions have, however, inevitably emphasized different portions of the Robison test, and, in the course of doing so have created some inconsistencies. Very few of these have involved the second major prong of the Robison test, whether the employee contributed to the function of the vessel or to the accomplishment of its mission. This aspect of the test is by its nature easily ascertained — for example, Robison’s duties aboard the seagoing drilling platform clearly contributed to the function that it was designed to serve — drilling for oil.”
(Footnotes omitted).
The history of Jones Act jurisprudence demonstrates, and a case cited by defendants, Pizzitolo v. Electro-Coal Transfer Corp., 812 F.2d 977 (5th Cir.1987), rehearing denied, 823 F.2d 552 (5th Cir.1987), specifically holds that if one is a longshoreman under the Longshore and Harbor Workers’ Compensation Act § 2(3) as amended 33 U.S.C.A. § 902(3), he cannot be considered to be a seaman under the Jones Act, supra. Still the duties of piloting the vessels owned by John E. Grahan and Sons, which were performed by Landry with considerable frequency, militate against our finding Landry to be primarily a longshore *281 man or harbor worker, rather than a Jones Act seaman.
The test for determining whether or not one is a Jones Act seaman as used by the United States Fifth Circuit is as follows:
(1) Is the person injured more or less permanently attached to a vessel or a fleet of vessels?
(2) Did the capacity in which the person was employed contribute to the function of the vessel or to the accomplishment of its mission?
Under the holding of the Fifth Circuit in Fazio v. Lykes Bros. S.S. Co., Inc., 567 F.2d 301 (5th Cir.1978), to be a seaman one must have a more or less permanent connection with a vessel or a fleet of vessels. As Fazio properly notes, the larger the fleet, the more tenuous the connection. The Fifth Circuit further notes in Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983), U.S. cert. denied, 464 U.S. 1069,104 S.Ct. 974, 79 L.Ed. 2d 212 (1984), although it was formerly a requirement that a fleet of vessels have common ownership or control if one seeks seaman status under a fleet of vessels concept, common ownership or control is no longer required, as the scope of Jones Act coverage as found by the courts is gradually expanding. However, a somewhat narrower view is found in Bouvier v. Krenz, 702 F.2d 89 (5th Cir.1983), in its statement that work aboard a fleet of vessels must not be spasmotic and the relationship between the individual and the ship must be substantial in point of time and work.
Landry meets all these tests. He worked on vessels on an average of five hours a day. All the ships on which he worked were owned or chartered by John E. Grahan and Sons, were operated by the company and were painted the same colors. His work onboard the vessels was not merely spasmotic. Landry’s work as set forth above was clearly necessary to the mission and purpose of these vessels, which was to engage in navigation for petroleum companies in inland waterways and offshore. There can be no question that Landry was an experienced seaman and that an essential part of his duties was to pilot the vessels for various purposes, the traditional work of a seaman. The fact that Landry was also required to perform work which in many cases is performed by shore based workers, (transporting supplies, minor repairs and maintenance supervision) does not detract from the fact that only a qualified seaman could have performed all of the duties of his job. Since the uncontradicted evidence demonstrates that Landry performed a substantial part of his work onboard an identifiable fleet of vessels, and since an essential part of that work was that of a seaman, we find no error in the decision of the trial court granting partial summary judgment decreeing Landry a seaman for the purposes of the Jones Act.
Accordingly, the judgment of the trial court is affirmed, all costs to await final disposition of the matter.
AFFIRMED.