## ANDERSON et al. v. MANHATTAN LIGHTERAGE CORPORATION.

### No. 268.

Circuit Court of Appeals, Second Circuit.

April 16, 1945.

Abraham M. Fisch, of New York City, for plaintiffs-appellants.

Chauncey I. Clark, of New York City (Burlingham, Veeder, Clark & Hupper and Herbert M. Lord, all of New York City, on the brief), for defendant-appellee.

Douglas B. Maggs, Sol., and Archibald Cox, Associate Sol., both of Washington, D. C., Irving Rozen, Regional Atty., of New York City, and Edward D. Friedman, Atty., U. S Dept. of Labor, of Washington, D. C., for the Administrator of the Wage and Hour Division, U. S. Dept. of Labor, amicus curiae.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal from summary judgments for defendant in actions for overtime compensation and liquidated damages under § 16 of the Fair Labor Standards Act, 29 U. S.C.A. § 216, raises the question whether plaintiffs, as "captains" of lighters transferring cargo in New York Harbor, come within the exemption from the statutory provisions for overtime payment of "any employee employed as a seaman," § 13(a) (3), 29 U.S.C.A. § 213(a) (3). More than one hundred plaintiffs joined in two actions which were heard below on defendant's motion for summary judgment on affidavits and upon depositions of plaintiffs taken by defendant. The court held that plaintiffs were seamen, Arnesen v. Manhattan Lighterage Corp., D.C.S.D.N.Y., 57 F. Supp. 218,[1] and they have appealed in a

[1] The caption of this case in the record seems even less descriptive than usual; it is Arnesen v. Lee & Simmons, Inc., neither of whom were parties to the judgment appealed from.

single consolidated appeal. The Wage and Hour Administrator has filed a brief amicus curiae urging reversal.

Decision, of course, turns upon the nature of plaintiffs' occupation as lighter captains for defendant in its business of lightering cargo in New York Harbor between ships and between ship and shore. Plaintiffs' affidavits show that 95 per cent of their duties are similar to those of a longshoreman. Each morning they "shape" or select groups of longshoremen to load and unload the vessels. In connection with such loading and unloading, plaintiffs usually operate the winch lifting and lowering the cargo hooked onto a block and fall, which is asserted to be the same operation usually performed by a gangwayman in a longshoremen's gang. They also check the cargo on the dock against the cargo list, for the purpose of identifying those items which are to be loaded, and examine the cargo as to its condition at the time of receipt, thereby performing the duties of a pier checker. At the end of the day they usually pay their men for the day's work, noting each worker's social security number.

As shown by both the affidavits and the depositions, plaintiffs' strictly nautical duties are few. Defendant's lighters are non-self-propelled, but are towed by tugboats. The tug crew generally takes charge of navigation. Plaintiffs usually are not even on board during the tow, for towing is done mostly at night after they have gone home. The facts stressed by defendant—that plaintiffs understand that when the vessel is towed during the day they are to go with the vessel; that defendant can insist that plaintiffs go on trips at night; and that plaintiffs will, if requested, go on long trips aboard these vessels—do not change this picture in any substantial aspect.

In general, therefore, plaintiffs' nautical duties are limited to reporting any damage and leaks, pumping bilge water, checking the spring and breast lines, trimming the load, and occasionally handling these lines during towage. Although the lighters are equipped with cabins, where plaintiffs can bunk, and with cooking utensils, they do not use these facilities except for a very rare, long trip. For the most part they work eight hours a day and, unlike seamen, are paid by the week, instead of by the month, on the basis of an hourly rate, with time and a half for overtime. Social security deductions are made from their wages, and they are entitled to unemployment insurance.

Precedents to aid decision seem none too apt. The Supreme Court has held that, where a bargee's duties are all nautical and he has none in connection with the handling of cargo, he is a "member of a crew" within the meaning of the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Norton v. Warner Co., 321 U.S. 565, 64 S. Ct. 747, 751, 88 L.Ed. 931. But as to one who has few nautical duties and for the most part loads and unloads cargo, the Supreme Court has declared that he is not a "member of a crew." South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S. Ct. 544, 547, 84 L.Ed. 732. These cases stress that the decision must be one of fact in the particular case. In United States Lighterage Corp. v. Hoey, 2 Cir., 142 F. 2d 484, 486, this court held, with respect to workmen having cargo duties of a generally similar nature to those of the plaintiffs, that they were exempt as "members of the crew" from the provisions of the Social Security Act, 42 U.S.C.A. § 301 et seq. But the Hoey case and such others relied on by defendant as Gale v. Union Bag & Paper Corp., 5 Cir., 116 F.2d 27, certiorari denied 313 U.S. 559, 61 S.Ct. 837, 85 L.Ed. 1519; Berwind-White Coal Mining Co. v. Rothensies, 3 Cir., 137 F.2d 60; Bolan v. Bay State Dredging & Contracting Co., D.C.Mass., 48 F.Supp. 266; and Jordan v. American Oil Co., D.C.R.I., 51 F.Supp. 77, either show quite clearly that the greater proportion of the work performed was of a maritime character or refrain entirely from considering the question of the ratio of nautical to longshore duties. Under the Compensation Act, at least such a comparison is unnecessary, for, as we pointed out in Long Island R. Co. v. Lowe, 2 Cir., 145 F.2d 516, 518, the question there is as to the employee's "actual duties" "on the day in question."

This does not mean, however, that such comparison is immaterial here. The terms "seaman" and "member of a crew" are flexible and should be defined "for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained." Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 48, 79 L.Ed. 254. In order to apply the term properly in the Hoey case, supra, 142 F.2d 484, 486, we referred to regulations under the Social Security

Act, which brought within the exemption all those "contributing in any way to the operation and welfare of the vessel." Certainly under that definition a finding as to what proportion of the barges' duties contributed to the ship's welfare would have been irrelevant. It was sufficient that they helped the ship in any way at all. But the applicable interpretation by the Wage and Hour Administrator, to which we must give considerable weight in arriving at a proper definition of the scope of the exemption now before us, Skidmore v. Swift & Co., 323 U.S. 134, 136, 65 S.Ct. 161, cf. Duquesne Warehouse Co. v. Railroad Retirement Board, 2 Cir., 148 F.2d 473, excludes therefrom "barge tenders on non-self-propelled barges" who "do a substantial amount of nonexempt work" such as "loading and unloading and activities relative thereto." Interpretative Bulletin No. 11—Seamen Exemption, July, 1943, par. 6. The word "substantial" denotes a comparison based on a ratio of nautical to longshore duties. Hence guided by the Administrator's interpretation, the showing by affidavit that 95 per cent of plaintiffs' work is "nonexempt" precludes summary judgments against the plaintiffs.

But the Administrator's interpretation is not a sole aid to interpretation here. The legislative history of the "seamen" exemption in the Fair Labor Standards Act furnishes a further guide to the scope of its application. Pursuant to requests made by various maritime unions, the exemption was written into the Act primarily to avoid conflict between the jurisdiction over seamen already conferred on the Maritime Commission in regard to wages, working conditions, and manning scales on subsidized merchant ships, 46 U.S.C.A. § 1131(a), and that of the newly established Wage and Hour Administration.[2] Of course, it would be impractical to draw a line expressly between workers on subsidized and nonsubsidized ships. But the Administrator's interpretation draws a line sufficiently broad to exempt all workers under the Maritime Commission's control and to avoid jurisdictional conflicts. Even without such interpretation there seems no reason why the present plaintiffs should be considered outside the Act.

Persuasive also is the further reason behind this exemption, namely, the impracticability of regulating the wages and hours of ordinary seamen in the manner contemplated by the Act. Thus workers navigating transport vessels generally must be furnished food and quarters free of charge. 46 U.S.C.A. §§ 80, 564, 713. Naturally such workers opposed the application to them of general legislation which permitted an employer to include in wages the cost of facilities furnished to his employees.[3] Moreover, as appears from the testimony at the Congressional Committee hearings,[4] it is not practicable to set working hours for such employees at less than fifty-six a week even under the best conditions. Their contracts, as well as the circumstances of their occupation, bind them to their vessel for the whole voyage under all conditions and perils of the sea. Their work week can hardly be limited to forty hours. But these plaintiffs are not tied to their vessels in any such manner, and, indeed, are actually paid weekly, on an hourly basis, with premium pay for time over eight hours a day. Thus, actually they were working under the conditions embodied in the Act before its enactment. And we are not dissuaded from the Administrator's interpretation by defendant's contention that tugboat crews are paid on a basis similar to that of plaintiffs and are exempt even under the Administrator's interpretation. General principles cannot hit all cases with precise accuracy; if in other situations the purpose of the Act may have failed of complete accomplishment, that is not a sufficient basis to deny its benefits to these plaintiffs. As we have been instructed, exemptions from this "humanitarian and remedial legislation" are to be narrowly construed, and to extend them to persons other than those clearly within the terms and spirit of the Act "is to abuse the interpretative process and to frustrate the announced will of the people." A. H. Phillips, Inc., v. Walling, 65 S.Ct. 807, 808.

Reversed and remanded.

---

[2] Joint Hearings before Senate Committee on Education and Labor and House Committee on Labor on S. 2475 and H. R. 7200, 75th Cong., 1st Sess., pp. 1216, 1217, 546-549; 81 Cong. Rec. 7875.

[3] Joint Hearings, supra note 2, pp. 548, 549.

[4] Joint Hearings, supra, note 2, p. 548.