538

**KNUDSEN et al. v. LEE & SIMMONS, Inc., and two other cases.**

District Court, S. D. New York.

Aug. 7, 1946.

Abraham M. Fisch, of New York City, for plaintiffs.

Hagen & Eidenbach, of New York City (Charles W. Hagen and Henry C. Eidenbach, both of New York City, of counsel), for defendant.

KNOX, District Judge.

John Knudsen, an employee of Lee & Simmons, Inc., for the past eighteen years, has been Captain of the lighter Jupiter ever since the enactment of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. He here claims he is within the coverage of that statute. Defendant contends Knudsen is a seaman. If this be so, he is within one of the exemptions provided by Section 13(a) of the statute, which reads:

"The provisions of section 6 and 7 * * * shall not apply * * * to * * * (3) any employee employed as a seaman."

The question for decision, while apparently simple, is not free from difficulty. This is due to the fact that the word "seaman" is no longer exclusively descriptive of mariners who can "hand, reef and steer," but is now applicable to sundry other persons employed on or about a ship. Furthermore, the word had been used in different senses in different statutes, its meaning varying with the context in which it is employed. 56 C.J. 922. My present task, therefore, is to determine whether Knudsen is a seaman within the meaning of that word as it is used in the Fair Labor Standards Act. This will depend, in part at least, on the character and nature of the work he performs.

Defendant is a domestic transportation company, and is engaged in carrying cargo in interstate commerce. Its transportation activities are water borne and consist of ferrying merchandise on board its vessels from point to point within inland and coastal waters in and about the harbor of New York. For the most part, the vessels so operated are barges and sticklighters, and are without means of self propulsion. If need be, defendant charters scows and canal boats to supplement its own fleet of carriers.

The vessels with which this litigation is concerned are registered as barges, and are enrolled under a Consolidated Certificate of Enrollment and License, issued by the United States Department of Commerce. They are thereby authorized "to be employed in carrying on the coasting trade."

By a series of successive contracts with the Lighterage Captains Union, Local 996, running from 1937 to 1945, inclusive, defendants agreed to hire none but union members as captains on board its lighters and barges. Pertinent terms of the agreement are as follows:

"1. The following wage scale and working conditions shall prevail * * *

"Minimum Wage on Steam and Gasoline Hoisting Lighters. $7.80 per day.

"2. Captains of lighters loading and discharging cargo between 5 p. m. and 8 a. m. shall be paid time and one-half, exclusive of meal hours, from 5:00 p. m. until loading or discharging is completed, except that after earning the equivalent of six (6) hours at time and one-half, additional compensation will be paid only for actual time

cargo is worked, provided, however, that whenever Captains earn six (6) or more hours at overtime, they shall if watching is required or lighter is towed and Captain is required to be aboard, be paid One dollar ($1.00) additional for either such watching or towing, or both.

"3. The working hours of the day are to be from 8:00 a. m. to 5:00 p. m. or eight (8) hours per day. * * *

"5. Captains ordered to be on their boats on a Sunday or legal holiday for the purpose of watching or towing, shall be paid one full day's pay.

"For loading or discharging on Sunday or a legal holiday, Captains shall be paid time and one-half. * * *

"7. It shall be the duty of Captains to perform such labor in connection with loading and unloading or tallying cargoes as may be reasonably required by the employer, and no extra compensation shall be paid for such labor. * * *

"12. While unit is handling damaged cargo, for the handling of which longshoremen are entitled to additional pay, Captain shall be paid an addition three-quarter(¾) day's pay at the basic daily wage set forth herein, for the type of unit employed, for each day the unit is loading, under load or unloading such damaged cargo."

Usually, Knudsen works six days a week. However, if the lighter is not in service as a result of lack of freight, he does not go aboard.

Under ordinary conditions, Knudsen neither eats nor sleeps aboard the Jupiter. It is, however, equipped with facilities for both purposes. He is not required to be in possession of a seaman's certificate, and never has had one.

Furthermore, his qualifications as a lighter captain are not determined by an examination either by a governmental agency or by the defendant. The latter, nevertheless, by contract, is the sole judge of a captain's qualifications. Generally speaking, Knudsen, while he has sailed before the mast on coastwise vessels, has no training as a mariner, and when his lighter is towed, he has no part in the operation except, perhaps, to handle the lines between his boat and the tug.

The Jupiter, it may be observed, is a one deck barge and is without a mast. She is about ninety-five feet long, 32 feet in width, and has a depth of 8.3 feet. Her net tonnage is 219.

As bearing on the type of work in which Knudsen was primarily engaged, attention should be directed to the testimony of defendant's bookkeeper, Harry Fairweather. His records show that in 1941, a fairly typical year, the lighter Jupiter was under charter for 13 days. It was directly engaged in the service of defendant for 313 days. On 181 of such days, the lighter was either loading or discharging cargo. On 132 days, no cargo was worked.

On the morning of a day on which cargo is to be worked, Knudsen goes on the Jupiter at the point where it is moored. If defendant's "runner" has not hired a gang of longshoremen to load or discharge the boat, it is Knudsen who procures their services. He also pays them with funds of the defendant. He also starts the engine of the hoister on the Jupiter so as to "have it ready for the man that's got to hoist. He would do the hoisting, and if he don't I (Knudsen) have to do it. When I do the hoisting, I am sitting or standing in the engine room there, and I have a lever to take back and forth to pick up the cargo from the dock, and get it on the lighter, or if we have it on the lighter we take it from the lighter and put it on the dock like in drafts. It is the same thing that a winchman does on board the vessel. He has the boom stationary on the cargo, and he picks the cargo out of the hold of the ship and swings it right on the pier."

When a person other than himself operates the hoist, Knudsen acts as a signal, or gangway man, and he will sometimes be so engaged for a full day of eight hours. He is also required to tally cargo, and to take note of such of it as may be damaged. He gets the notation from the checker on the dock, on a paper, and when he is through loading the cargo, he goes to the delivery clerk on the pier, signs for it, and gets the notation about a particular cargo. He sometimes handles damaged cargo that has been down in the water, or which has been injured on board a ship. At this point, it is to be observed that this latter type of

work is recognized by the contract under which Knudsen is employed, as being of a type for "which longshoremen are entitled to additional pay."

Another duty that rests upon Knudsen is to see that cargo is properly stowed, and to supervise the method of its discharge. On one or two nights a month, he is required to watch cargo at nights.

When the lighter is being towed, Knudsen does not accompany it unless he is ordered to go along to watch it. He has no duties to perform with respect to the navigation of the tug or the lights except, occasionally, to handle the lines of his craft. If the lighter is without cargo, Knudsen does not go aboard.

Coming now to services performed by Knudsen which have a savor of seamanship, they may be stated as follows: Tending mooring lines, splicing lines, handling hawsers, pumping bilges, putting out navigation lights when running at night, responding to signals of tugs having his vessel in tow, reporting damage to vessel or cargo, making or reporting emergency repairs, overseeing the tow and trim of cargo, cleaning the vessel, inspecting the vessel for leaks, securing tarpaulins, and rigging the lighter boom for the purpose of receiving and discharging cargo.

While these duties are both necessary and important, they do not usually require more than twenty to thirty minutes a day. To my mind, they are but incidental to the stevedoring work in which Knudsen is primarily engaged. Most of these items are of a simple nature, and with one or two exceptions, easily performed. It would appear that the performance of such duties should not, in the light of the other and more onerous tasks to which Knudsen devotes the far greater part of his time, be held to transform a harbor worker into a man whose main calling is the sea.

So concluding, and believing, also, that the decisions in Anderson v. Manhattan Lighterage Corporation, 2 Cir., 148 F.2d 971, and William Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847, certiorari denied 66 S.Ct. 1012, require me so to hold, I shall, without further discussion, sustain Knudsen's complaint.

For similar reasons, I think that Knudsen's co-plaintiffs, Simon DeVries and Nils Victor, together with Henry A. Harrison, Captain of the lighter "Frank" (31—243) are also entitled to recover.