## McCARTHY v. WRIGHT & COBB LIGHTERAGE CO.
### No. 21, Docket 20528.

Circuit Court of Appeals, Second Circuit.
July 21, 1947.

---

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Thomas A. McDonald, both of New York City, of counsel), for defendant-appellant.

Abraham M. Fisch, of New York City, for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

During the years 1942, 1943, 1944, 1945 and 1946, the plaintiff, McCarthy worked as a bargee in the employ of the defendant-company—hereinafter designated as Wright & Cobb. He was employed pursuant to a contract between Wright & Cobb and the Lighter Captains' Union, Local 996. The contract provided that the working hours of the day were to be from 8 A. M. to 5 P.M. and that the minimum wage on covered barges and lighters was to be $7.30 per day; it also provided that whenever captains earn 6 or 8 hours at overtime, they shall, if watching is required or the lighter is towed and they are required to be aboard, be paid $1 additional for such watching or towing or both. It made certain special provisions for overtime and also provided that:

"It shall be the duty of Captains to perform such labor in connection with loading and unloading or tallying cargoes as may be reasonably required by the employer, and no extra compensation shall be paid for such labor."

The contract also provided that an extra sum of $2 per day should be paid when the vessel was moored at Poughkeepsie or north of it on the Hudson River and that a captain should be assigned to each lighter in service from the time the lighter started to load until it was discharged.

The plaintiff was a bargee on the covered barge Dorothy Stark, which had no motive power but was towed from one place to another principally in New York Harbor in order to take on and discharge her loads. He performed the ordinary duties relating to the vessel itself such as attending to her lights and anchors, putting out running and mooring lines and pumping bilge water. According to his testimony, these duties only occupied a few minutes a day. The Dorothy Stark had a hoist but McCarthy said he had only used it on about ten occasions during the five years of his employment. He, however, testified that he supervised the loading and unloading in order to see that everything was "carried out all right so that they don't tear any bags" and that he had to check against the pier checkers in order to see that his numbers and marks on the cargo corresponded with those reported by the checkers; that in a 30-day month 24 of those days were ordinarily spent in loading and unloading the lighters. He said that he lived at home on shore and was rarely on the lighter at night; that when the boat was being towed he had nothing to do except take orders from the tug; that about twice a year the Dorothy Stark was towed up the river to Hudson, New York, to take on a load of cement and that he supervised the loading and checking of that cargo, and that while there he was accustomed to hold and direct the hose through which the cement was run down from cars into the lighter. When the barge was at Hudson and awaited loading Wright & Cobb allowed him to return home and paid his railroad fare to and fro. He said that at times, though rarely, he worked at painting the lighter when she was in dry dock. He also said, apparently referring to times when the lighter was loading ammunition at night, that the sailors were likely to be under the weather and he would help them handle the cargo (fols. 170, 171).

Cobleigh, the vice-president and office manager of Wright & Cobb, was called as a witness on behalf of the latter. He testified that the hoist was not used during the first six months of 1942; that the plaintiff had nothing to do with the hiring of stevedores or the loading or checking of the lighter; that the plaintiff had to call the office every day and inform them where his boat was and its condition; that while he might as a matter of convenience do some checking of cargo, such work was purely optional and not required; that he had nothing to do with loading, unloading or

checking as far as Wright & Cobb were concerned. He admitted, however, that the plaintiff did what the charterer asked him to (fol. 200) do, but claimed that the bargee was never supposed to do these things and was not paid for doing them. In other words, Cobleigh attempted to establish that the plaintiff was only hired to attend to the lighter itself and not to do anything with respect to cargo. His position was corroborated by Anderson, an employee of Wright & Cobb, who was also called as a witness on their behalf. It is to be observed that Cobleigh was really not in position to know at first-hand the facts on which his conclusions were based. He was the office manager of Wright & Cobb and did and could not claim to have been present to any substantial extent when the lighter was being loaded or discharged. In other words, he was drawing conclusions as to what he considered were the normal duties of the plaintiff and was, in the defense of his company, limiting them to work which had nothing to do with supervising, loading or unloading. He was entirely overlooking the provision we have quoted from the contract with the union that bargees should perform such duties in connection with loading and unloading or tallying cargoes as might reasonably be required by their employer. The clause in terms precluded extra compensation for any work in loading, unloading or tallying and, when taken in connection with Cobleigh's admission that the bargee did what the charterer asked him to do, would indicate that any such work must be performed when reasonable. Cobleigh's generalizations seem a rather inconclusive answer to the plaintiff's testimony. But in any event, Judge Knox, who tried the case without a jury, had rendered a judgment for the plaintiffs in the action of Knudsen, DeVries and Victor v. Lee & Simmons, Inc., D.C., 68 F.Supp. 538, and said at the conclusion of the testimony in the case at bar that he would follow the same rule as in the Knudsen case because, in his judgment, men who worked on harbor barges like the Dorothy Stark and performed duties on the type involved here were not seamen. He was referred by plaintiff's counsel to the decisions in Anderson v. Manhattan Lighterage Corp., 2 Cir., 148 F.2d 971, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428, and Wm. Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847, where the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., was dealt with in its relation to bargees employed on harbor lighters. He said that he had read those cases with the utmost care and was confident that the plaintiff did not come within the exemption of the Act.

While it is unfortunate that the trial judge wrote no opinion and made no findings in the case at bar, it is clear from his statements that he necessarily believed the plaintiff's testimony. Under that testimony, the plaintiff was shown to have spent by far the greater part of his time in supervising, checking, and in one way or another facilitating the loading or unloading of cargo, and not in merely caring for his barge and attending to her moorings. We think such a man is a harbor worker and not a seaman and, therefore, that the provisions of the Act as to wages and hours were applicable.

In view of what we have already said in our opinion in Knudsen et al. v. Lee & Simmons, Inc. (to be filed herewith) about the administrative regulations adopted at various times under the Fair Labor Standards Act, we think it unnecessary to discuss them further. It is apparent for the reasons given in that opinion that the plaintiff in the case at bar was not in the exempt class.

Accordingly, the judgment for the plaintiff is affirmed.