KNUDSEN et al. v. LEE & SIMMONS, Inc.

United States District Court
S. D. New York.
Sept. 23, 1949.

See also 170 F.2d 210.

Abraham M. Fisch, New York City (Abraham M. Fisch, Sidney Schiffman, Daniel H. Greenberg, New York City, of counsel), for plaintiffs.

Hagen & Eidenbach, New York City (Charles W. Hagen and Thomas A. McDonald, New York City, of counsel), for defendant.

KNOX, Chief Judge.

This suit was begun in 1943, when the employees of a number of lighterage firms in the New York area sued their respective employers for overtime pay, together with liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Civil 23-517.

One of the defendants moved for summary judgment, on the ground that its employees were seamen, and hence exempt from the Act. That motion was granted by the District Judge, but the decision was reversed on appeal. Anderson v. Manhattan Lighterage Corporation, 2 Cir., 1945, 148 F.2d 971.

Thereafter, the case against Lee & Simmons came on for trial before me, the sole issue being whether or not the employees were properly classifiable as seamen. On August 7, 1946, I rendered an opinion, D.C., 68 F.Supp. 538, in which I held they were not seamen, and judgment was entered for plaintiffs on January 10, 1947. My conclusions underwent appellate review, and on July 21, 1947, they were affirmed. 2 Cir., 163 F.2d 95. The appeal was argued before

the date of enactment of the Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq., but the decision was rendered subsequent thereto. Shortly thereafter, the defendant filed a petition for rehearing. This was denied. However, the Court of Appeals ordered "that the cause be remanded to the District Court with authority in that Court to consider and adjudicate any matters that may be presented to it under the Portal-to-Portal Act of 1947 by the parties."

Defendant then moved successfully before me for permission to file a supplemental answer, setting up defenses under the Portal-to-Portal Act. Plaintiffs thereupon sought to review my action in the premises before the appellate court for this circuit. This effort failed inasmuch as the court ruled that my order was not appealable. March 30, 1948. 2 Cir., 167 F.2d 320. Judge Frank dissented. Defendant thereafter moved to clarify the original mandate, which had ordered the District Court to consider the Portal-to-Portal Act. The motion was denied, on the ground that the terms of court had expired, but the appellate court made clear that the District Court was to consider all questions presented under the new Act. 2 Cir., 170 F.2d 210, October 26, 1948.

In defendant's supplemental answer, six separate defenses are pleaded. They are as follows:

1. That under Section 2(a) of the Portal-to-Portal statute, neither the overtime nor any activity of plaintiffs was compensable according to custom, practice, or by express contract;

2. That under Section 2(d), the court was without jurisdiction, on the ground set forth above;

3. That under Section 3, the claims were compromised, settled, and released;

4. That under Section 9, defendant had relied in good faith on administrative rulings;

5. That under Section 11, the defendant acted in good faith with reasonable grounds for believing it had not violated the Act, and

6. That under the Constitution, in view of the findings and declarations of Congress incorporated in Part I of the Portal-to-Portal Act of 1947, the 1938 Act was unconstitutional.

Trial having been had on the merits of these defenses, the matter in issue must now be adjudicated.

### Constitutionality.

■ No argument was made and no authorities cited in support of the contention that the Congressional findings incorporated into the Portal-to-Portal Act invalidate the 1938 Act. Indeed, no specific section of the Constitution is alleged to have been violated. In my opinion, this defense can not be sustained. U. S. v. Darby, 1941, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430.

### Compromise.

■ The dispute on this phase of the case has to do with the coverage of the statute. Prior to the enactment of the Portal-to-Portal Act, the Supreme Court had decided that the settlement of the dispute as to coverage could not be compromised. D. A. Schulte, Inc. v. Gangi, 1946, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208. Section 3 of the new Act permits compromises where there exists "a bona fide dispute as to the amount payable by the employer to his employee." While this phraseology does not necessarily abrogate the rule of the Schulte case, it is apparent from the statement of Representative Walters on the part of the House conferees, that such was its purpose. Cong. Rec.1947, p. 4389. See also McCloskey & Co. v. Eckart, 5 Cir., 1947, 164 F.2d 257; Urbino v. Puerto Rico Ry. Light & Power Co., 1 Cir., 1947, 164 F.2d 12.

Defendant maintains that a collective bargaining contract made between defendant and the labor union to which plaintiffs belong embodies a compromise of the claim asserted by the plaintiffs in this action. Defendant relies particularly upon provision 12 of the original contract of November 25, 1938, which reads: "This Agreement is entered into by the respective parties thereto without prejudice to the Fair Labor Standards Act, 1938." A similar

clause was contained in all renewals of the contract.

This clause can not afford protection for the period between the effective date of the Fair Labor Standards Act, October 24, 1938, and the crucial day of the first contract, November 1, 1938. The problem is as to the remainder of the 1938–1945 period, with which this suit is concerned.

The testimony with respect to the purpose and intent of section 12 of the contract was far from conclusive. A representative of the employer said that it meant that the parties would abide by the contract regardless of any subsequent judicial determination of the scope of the act, and that the contract was to stand regardless of whether the employees should be found not to have the status of seamen The business agent of the union testified that the meaning of the clause was that if defendant's employees were within the coverage of the Act, they would be entitled to its benefits.

In addition to this oral testimony, two letters written by Joseph Glatzmayer, who negotiated the contract in behalf of the employers' association, are in evidence. The first, of November 25, 1938, suggests inferentially that Section 12 was included at the instance of the union. In the second letter, written four days later, Glatzmayer wrote to the employers as follows: "Provision 12 is new, having been inserted to obviate the possibility of voiding the agreement in the event of a decision by the Administrator of the Fair Labor Standards Act, 1938, unfavorable to either party thereto."

The more apparent meaning of the provision, it seems to me, is that the Act might displace the contract, rather than that the contract should displace the Act. Glatzmayer's communication to the employers indicates that the Section was included to permit the contract to remain generally effective should portions of it be found incompatible with and voided by the Fair Labor Standards Act.

My conclusion is that provision 12 of the contract, instead of embodying a compromise of the plaintiffs' claim under the 1938 Act, specifically excluded such claims from the possibility of compromise.

### The Good Faith Defenses.

Section 9 of the Portal-to-Portal Act provides that failure to comply with the 1938 Act may be excused if such failure "was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged."

The administrative history of the application of the Act to workers such as plaintiffs is as follows:

The 1938 Act became effective on October 24, 1938. On April 29, 1939, the Wage & Hour Administrator issued Bulletin No. 11, in which he took the position that lighter captains ordinarily were within the coverage of the statute because their primary function consisted of attending to the cargo. Immediately thereafter, Victor Ahearn, Executive Secretary of the National Sand and Gravel Association, apparently also acting in this instance for the Harbor Carriers of the Port of New York, the lighterage industry's employers' association in this area, protested the administrator's interpretation of the Act.

In the summer of 1939, in the Federal District Court in Savannah, a suit was instituted to test the application of the Act to employees on barges. Upon the trial of that action, the Administrator did not appear, and in November, 1939, the court held that the employees were seamen, and hence not covered by the Act. Lowrimoore v. Union Bag & Paper Corp., D.C. Ga.1939, 30 F.Supp. 647.

On July 3, 1940, the Administrator wrote to Mr. Ahearn, expressing his belief that employees on dredges engaged in producing sand and gravel in navigable waters were not to be considered as seamen. On July 12, 1940, the Administrator issued a press release in which he announced that he had reached the conclusion that "the employees operating the dredges and other

floating equipment of the Smoot Sand and Gravel Corporation are seamen." The release closed with this sentence: "* * * the Administrator's interpretation of the statute is subject to review by the courts, but I propose to adhere to this view unless at some future date my administrative construction is deemed erroneous by a court of competent jurisdiction."

Thereafter, on July 16, 1940, the Administrator wrote a letter to Mr. Ahearn, in which he discussed the status of employees on dredges, and repeated his conclusion that the employees of the Smoot Company were seamen. The Administrator added: "This is not a ruling of general application, however, as I am of the opinion that the application of the statute may vary according to the method of operation in particular cases. Consequently, the Division will not issue any new interpretative bulletin on the subject until the question is clarified by the courts."

On July 24th, Mr. Ahearn wrote to the Administrator, expressing his thought that the Administrator's letter of July 16th required clarification. On August 5, 1940, he again wrote to the Administrator, stating his understanding that employees on dredges in navigable waters were exempt. His closing paragraph was as follows: "If the understanding set forth in this letter is not correct in substance or in detail, I shall appreciate advice from you in that regard." The Administrator did not reply, and Ahearn issued a bulletin for his association in which he called attention to these communications.

On October 9, 1940, the Administrator issued a release in which he stated "that employees on sand and gravel dredges will not in the ordinary case be regarded as seamen and therefore exempt from the benefits of the Wage and Hour Law. The ruling in the case of Smoot Sand and Gravel Co. in Washington, D. C. will be limited to the particular circumstances and facts of that company's operations." The release continued: "There should be compliance with the provisions of Interpretative Bulletin No. 11 except where individual establishments have obtained individual notice from the Administrator that their

employees shall be considered seamen and are therefore exempt from the Act."

On December 11, 1940, the Court of Appeals for the Fifth Circuit affirmed the decision in the Lowrimoore case, 116 F.2d 27, 5 Cir., 1940 (sub. nom. Cale v. Union Bag & Paper Corp.); disagreeing with the opposing brief which the Administrator had submitted amicus curiæ. Thereupon the Administrator filed an amicus curiæ brief on an application for certiorari. This was denied by the Supreme Court in April, 1941. 313 U.S. 559, 61 S.Ct. 837, 85 L.Ed. 1519.

Thereafter, on June 21, 1941, the Administrator issued a release as follows: "Employees on sand and gravel dredges, including those of the Smoot Sand and Gravel Company of Washington, D. C. will not be regarded as seamen and therefore exempt from the benefits of the Wage and Hour Law, General Philip B. Fleming * * * announced today." The new ruling was said to be founded on the Gale case, which established the principle that to be seamen "the employees' duties must be concerned with the navigation of the vessel." The decision was said not to be controlling "in the case of workers on barges who perform other duties—for example, workers who because of their loading and unloading functions are correctly to be regarded as stevedores. In such cases the exemption is not deemed applicable." The release concluded with this statement: "On October 9, 1940, the Division had announced that the Administrator's letter of the previous July 12 applied only to the particular circumstances of the operations of the Smoot Sand and Gravel Company. Employers of dredging employees who are engaged in interstate commerce or in the production of goods for interstate commerce are advised to comply with the provisions of the Act as to such employees."

In July, 1943, the Administrator revised paragraph 6 in Bulletin 11, which was concerned specifically with lighter captains. The original paragraph 6 was as follows: "6. Employees on lighters and other barges which are not self-propelled, ordinarily are not within this exemption. Their

duties require them to supervise the loading and unloading of the vessel, to act as caretaker of the vessel when loaded, and to handle receipts and inventories of the cargo. The duties performed by these employees, including the handling of the lines used in towing or manoeuvering the barge or lighter, are performed primarily as custodians of the cargo, and therefore, do not bring them within the exemption. * * *"

The revised version was as follows: "6. Barge tenders on non-self propelled barges who perform the normal duties of their occupation, such as attending to the lines and anchors, putting out running and mooring lines, pumping out bilge water, and other similar activities necessary and usual to the navigation of barges, are considered seamen within this exemption, unless they do a substantial amount of non-exempt work. * * *"

The Court of Appeals, in affirming my decision that the plaintiffs here were not seamen, 2 Cir., 1947, 163 F.2d 95, 96, quoted extensively from the new Bulletin, and stated that "Interpretative Bulletin No. 11, § 3, § 5 and § 6, when read together, make it clear that a bargee like Knudsen was not a seaman within the meaning of the Act because the services he rendered were not primarily an aid in the operation of the barge as a means of transportation * * *."

It remains to be noted, to complete the administrative record, that the Administrator never instituted any enforcement proceedings against any member of the lighterage industry.

■ *Section 9.* One necessary element of a valid defense under this section of the Portal-to-Portal Act is that the employer's action in reliance upon an administrative ruling or policy conform to such ruling or policy. General Statement as to the effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938, 29 CFR, 1947 Supp., 790.14. To satisfy this condition, defendant must show that the administrative opinion exempted these plaintiffs from the Act.

In my judgment, the Administrator was always of the opinion that work such as was performed by these plaintiffs did not justify exemption from the Act. The Administrator's opinion was principally expressed in Bulletin 11. I find both versions of this Bulletin to so read, and the Court of Appeals for this Circuit, in considering the revised version, agreed in this interpretation.

Defendant relies on the Administrator's action in reference to the Smoot Company and the Gale decision. I do not find it inconsistent with my view. The Smoot ruling, of July, 1940, was specifically said not to be of general application. Further, in October, 1940, the Administrator reaffirmed his view that the Smoot ruling was confined to the employees of that company and stated that, "there should be compliance with the provisions of Interpretative Bulletin No. 11 except where individual establishments have obtained individual notice from the Administrator that their employees shall be considered seamen, and are therefore exempt from the Act." Finally, in June, 1941, the Administrator reversed the Smoot ruling. This history certainly indicates that the Administrator believed that these employees would not be exempt, rather than the contrary. As to the Gale decision, the Administrator interpreted it as to require that "employees' duties must be concerned with the navigation of the vessel," an opinion certainly not helpful to defendant's cause.

Defendant also contends that its failure to comply with the Act was attributable to good faith reliance upon an administrative practice or policy of nonenforcement. It is a fact that the Administrator took no steps to enforce the Act against the lighterage industry. In addition, a field investigator of the Administrator visited defendant's offices in April, 1940, and examined the defendant's books, and also, to some extent made inquiry into the nature of its business. Following such investigation no demand was made on defendant to confer on its lighter captains the advantages of the Fair Labor Standards Act.

■ This contention falls for the reason that here we do not have a failure to en-

406

force and nothing more, but instead, a failure to enforce coupled with a stated administrative policy, which called for enforcement. The purpose of Section 9 is to relieve employers who have in good faith relied on what the administrative opinion was, even where that opinion was only revealed by a so-called nonenforcement policy. But where a policy is stated, the mere failure to enforce is not what the law contemplates as constituting such a non-enforcement policy as will relieve from liability.

■ Moreover, the failure of the field investigator of the Wage and Hour Division to find a violation after inquiry into defendant's payroll practices can not be considered an administrative ruling within Section 9. It does not constitute an opinion of the Administrator and has been so held in prior cases. Burke v. Mesta Machine Co., D.C.W.D.Pa., 1948, 79 F.Supp. 588; Semeria v. Gatto, Sup.1947, 75 N.Y.S. 2d 140; Wells v. Radio Corp. of America, D.C.S.D.N.Y., 1948, 77 F.Supp. 964.

■ In saying this, I do not mean to state that defendant was acting in conscious disregard of the Administrator's stated policy. Indeed, the record convinces me that such was not the fact. The classification of defendant's employees depended on the proportion of time occupied between cargo and navigational duties. The administrative record reveals a standard outlined only in the most general terms, and it was not difficult for defendant to deceive himself into believing that the services of his employees fell within the exempt category. However, the decisions of this Court and the Court of Appeals for this Circuit determined that the nature of the services rendered by defendant's employees placed them within the nonexempt class as outlined by the Administrator. Defendant having failed to conform to the administrative opinion, although his error was committed in good faith, can not defeat the plaintiffs' claim for the advantages of the 1938 Act.

■ *Section 11.* On the above view of the case, I am of the opinion that defendant is entitled to relief under Section 11 of the Portal-to-Portal Act even though the defense under Section 9 fails. Ferrer v. Waterman S. S. Corp., D.C., Puerto Rico, 1949, 84 F.Supp. 680; Conwell v. Central Missouri Telephone Co., D.C.W.D.Mo., 1948, 76 F.Supp. 398, affirmed 8 Cir., 1948, 170 F.2d 641; Sawyer v. Bay State Motor Co., D.Mass., 1948, 89 F.Supp. 843. Section 11 provides that "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act, * * * the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16(b) of such Act."

The record indicates that defendant had reasonable grounds for believing that his employees were exempt. The lack of specificity in the administrative record, coupled with the variable nature of plaintiffs' employment, made defendant's error a reasonable one. Furthermore, the failure of the Wage and Hour investigator to find a violation would tend to secure defendant in its erroneous belief. Anderson v. Arvey Corp., D.C.E.D.Mich., 1949, 84 F.Supp. 55; Bauler v. Pressed Steel Car Co., D.C.N.D. Ill., 1948, 81 F.Supp. 172. I find, therefore, that defendant acted in good faith and accordingly, I shall relieve him of the obligation to pay liquidated damages to the plaintiffs.

■ *Section 2, Defenses.* Defendant further contends that the overtime claimed here was not compensable by custom, practice or express contract as required by Section 2 of the Portal-to-Portal Act.

It is evident from the record that plaintiffs have worked 48 hours a week for numerous weeks throughout 1938 to 1945. There was no controversy in this Court over the measure of damages should liability for overtime be found. On this record, it must be assumed that the claim here is solely for hours worked at the behest of the employer in regular employment, but

not compensated at the increased rate required by the Fair Labor Standards Act for statutory overtime. Plaintiffs are not seeking payment for activities which were not thought compensable before the Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, decision. It is these newly perceived claims which Section 2 sought to eliminate and not those based, as here, on working time which always heretofore had been paid for. Michigan Window Cleaning Co. v. Martino, 6 Cir., 1949, 173 F.2d 466.

In conclusion, I find that the Portal-to-Portal Act serves only to relieve defendant of its liability for liquidated damages under the Fair Labor Standards Act. For the constitutionality of permitting a successful defense under the 1947 Act to be interposed after judgment prior to that Act, I rely upon Asselta v. 149 Madison Ave., D.C.N.Y. 1948, 79 F.Supp. 413.

Submit order.