## MARTIN et al. v. McALLISTER LIGHTERAGE LINE, Inc. et al.

### No. 219, Docket 22548.

United States Court of Appeals Second Circuit.

Argued April 15, 1953.

Decided June 25, 1953.

Nathan D. Aron, Brooklyn, N. Y., for appellants.

Foley & Martin, New York City, Christopher E. Heckman and William J. O'Brien, New York City, of counsel, for certain appellees.

Burlingham, Hupper & Kennedy, New York City, Herbert M. Lord, New York City, of counsel, for Manhattan Lighterage Corp., appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

The appellants are 42 "scow captains," each of whom was employed on a deck scow by one of the seven appellees. The question presented by the appeal is whether the men are entitled under the Fair Labor Standards Act of 1938, 29 U.S.

C.A. § 201 et seq., to recover minimum wages, overtime wages, liquidated damages and attorneys' fees for work performed during the two year period immediately preceding March 15, 1948, the date the action was commenced. More specifically the issue is whether they are within the coverage of the wage and hour provisions of the Act or are exempted therefrom by virtue of section 13, as amended, 29 U.S.C.A. § 213(a)(14), which exempts "any employee employed as a seaman".[1] The case was tried to the court without a jury.[2] Judge Conger made findings of fact and held that the plaintiffs, whose duties were primarily nautical, were exempt from the Act. Accordingly the complaint was dismissed.

Without repeating the facts stated in the trial court's opinion, 102 F.Supp. 41, familiarity with which will be assumed, we have, for convenience in discussing the appellants' contentions, set out in the margin the findings of fact relating to their duties.[3] The appellants do not dispute that their nautical duties were as set out in finding No. 10. They concede that they were seamen part of the time; but because their active nautical duties require only an hour or two in a normal working day, 7 A.M. to 5 P.M., they contend that for most of the time their duties were those of watchmen— a non-exempt classification. We do not agree that during a scow captain's stand-by time, his duties are like those of a shore-side watchman. While under tow, he has leisure time because the very nature of this type of seafaring job requires no exertion of labor, except that he must be alert to the need for his services, should that need arise. This is likewise true if he is on an empty scow waiting to be taken in tow or for a change in tide which may require a shift of lines. Doubtless his presence on a loaded scow may incidentally deter unauthorized persons from coming on board and may in some measure prevent pilfering of certain kinds of cargo. As Judge Conger said in his opinion: "But even then they [scow captains] were not watchmen in the sense that they were there to prevent pilferage and the like, although they would naturally be a deterrent to such an act. Rather, they were nautical watchmen alert for any damage to the boat through shifting [of cargo] or tide changes or collision; and so for the protection of the cargo."[4] Their employers did not regard them as cargo watchmen. Nor could they have been effective in that

1. For a statement of the legislative history of the exemption, see Weaver v. Pittsburgh Steamship Co., 6 Cir., 153 F.2d 597, 599, certiorari denied sub nom. Rymarkiewicz v. Pittsburgh Steamship Co., 328 U.S. 858, 66 S.Ct. 1351, 90 L.Ed. 1630.

2. Pursuant to stipulation certain of the plaintiffs testified on behalf of all as to their duties, and the defendants presented evidence on the same subject. Proof of damages was postponed until after determination of the issue of defendants' liability.

3. "8. The plaintiffs were paid in accordance with a union contract on a monthly basis. It was not necessary for them to have seamen's licenses.
"9. The contract prescribed no special working hours, but it provided for 'premium' pay to captains required to be on duty between the hours of 5:00 P.M. and 7:00 A.M. A captain's monthly pay would be deducted for any day he failed to be aboard his scow [when towed] between 7:00 A.M. and 5:00 P.M.
"10. The plaintiffs' duties included attending to lines, displaying lights, pumping out bilge water, putting out fenders, examining vessel for damage and leakage, observing of loading and unloading of cargo for proper distribution in scow, taking soundings of depth of water in certain berths, splicing lines and the like. Some plaintiffs made emergency repairs by the use of oakum and cotton and repaired small holes in the deck. In general, the scow captain attends to the welfare of the vessel.
"11. Plaintiffs did not load nor unload any of the scows.
"12. The plaintiffs' nautical duties did not require more than an hour or two of physical effort except during towing. The rest of the time they slept, ate, relaxed, read or busied themselves in any other fashion they liked until it was necessary to perform another nautical duty.
"13. The plaintiffs were seamen as that term is used in the Fair Labor Standards Act.
"14. The plaintiffs were not watchmen as that term is generally understood.
"15. The plaintiffs did not perform a substantial amount of work not exempt from the Act."

4. 102 F.Supp. at page 43.

capacity, for they carried no weapons, and many of them were so old as to be physically unable to resist a stalwart intruder. In so far as the appellants attack the trial court's conclusions as unsupported by the evidence, it will suffice to say that in our opinion the record amply sustains them; we cannot hold the findings of fact "clearly erroneous."

More than a dozen years ago it was held that barge tenders were "seamen" exempt from the Fair Labor Standards Act. Gale v. Union Bag & Paper Corp., 5 Cir., 116 F.2d 27, certiorari denied 313 U.S. 559, 61 S.Ct. 837, 85 L.Ed. 1519. There are no significant differences between the duties of the bargees as there described and those of the appellants in the case at bar. Apparently the Wage and Hour Administrator accepted the classification of the plaintiffs in that case and in July 1943 issued Interpretative Bulletin No. 11 in conformity therewith.[5] The appellants rely particularly upon the Administrator's ruling that "For enforcement purposes, the amount of non-exempt work will be considered substantial if it occupies more than 20 per cent of the time worked by the employee during the workweek."[6] They assert that the district judge erred in not giving adequate weight to this administrative interpretation.[7] But finding No. 15 finds that the plaintiffs did not perform any substantial amount of non-exempt work.[8] We agree. As stated in Judge Conger's opinion they were watchmen only in so far as they watched "for a nautical assignment to arise." Compare the exemption extended to radio operators or surgeons who sail as members of a vessel's crew. Obviously their stand-by time is normally much greater than the time spent on active duties. Yet section 783.2(b) of Bulletin No. 11 recognizes them to be within the seaman's exemption. Nor can we grant the argument that the scow captains who maintain families and homes ashore and go home when not required to remain aboard their vessels should be denied the exemption. This is equally true of the crews of many tugs or ferry-boats.

5. Interpretative Bulletin No. 11 was again promulgated in September 1947 and published in the Federal Register, 29 Code Fed.Reg. § 783 et seq. The most pertinent applicable provisions are as follows:

"§ 783.2 *Who is 'employed as a seaman,' for purposes of exemption.* (a) An employee will ordinarily be regarded as 'employed as a seaman' if he performs, as master or subject to the authority, direction, and control of the master abroad a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character. In our opinion, this exemption extends to employees performing such service on vessels navigating inland waters as well as on ocean-going and coastwise vessels.

\* \* \* \* \*

"(d) Barge tenders on non-self-propelled barges who perform the normal duties of their occupation, such as attending to the lines and anchors, putting out running and mooring lines, pumping out bilge water, and other similar activities necessary and usual to the navigation of barges, are considered seamen within this exemption unless they do a substantial amount of nonexempt work. Loading and unloading and activities relative thereto will be considered nonexempt work. Employees on seagoing barges would also seem to be employed as seamen if their services are of the type described in paragraph (a) of this section."

"§ 783.4 *Enforcement policy concerning performance of nonexempt work.* The Division has taken the position that the exemption provided by section 13(a) (3) of the Fair Labor Standards Act will be deemed applicable even though some nonexempt work (that is, work of a nature other than that which characterizes the exemption) is performed by the employee during the workweek, unless the amount of such nonexempt work is substantial. For enforcement purposes, the amount of nonexempt work will be considered substantial if it occupies more than 20 per cent of the time worked by the employee during the workweek."

6. See § 783.4 quoted in note 5, supra.

7. See Anderson v. Manhattan Lighterage Corp., 2 Cir., 148 F.2d 971, 973, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428; United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345.

8. See note 3, supra.

Finally it is urged that our own decisions require denial of the exemption.[9] In each of those cases the lighterman or bargee spent a large part of his workday in loading or unloading or tallying the cargo, duties normally associated with longshoremen. The present appellants have nothing to do with loading or unloading their scows; their duties with respect to cargo are only to see that it is so placed as not to strain the scow or endanger its stability.[10] The judgment is affirmed.

## FRANK, Circuit Judge (dissenting).

1. Defendants are members of the Harbor Carriers Association. One of defendants' principal witnesses, Bleakley, testified at the trial here that, in 1945, this Association argued to the War Labor Board that the services of "scow captains" include "not only physical labor"—lasting "an hour or two per day"—but "also various custodial duties such as those performed by watchmen in shoreside employment." So what my colleagues now say (i. e., "Their employers did not regard them as cargo watchmen") was not a fact in 1945. But in 1951, six years later, at the trial of the instant case, the employers testified exactly to the contrary, without the slightest suggestion that the functions of these employees had changed in the interval; and it is on that later testimony the trial judge rested his findings on which my colleagues rely. It seems clear to me that the defendants' description of the nature of plaintiffs' custodial work varies conveniently as it suits defendants' purpose. Consequently, I think no weight should be given to their testimony on that subject in this record, while much weight should be given to plaintiffs' testimony, i. e., that their watching services were like those performed by shoreside watchmen. On that basis, I think we ought to hold the trial judge's contrary finding to be "clearly erroneous." Gindorff v. Prince, 2 Cir., 189 F.2d 897; see discussion of that case in N. L. R. B. v. Dinion Coil Co., 2 Cir., 201 F.2d 484 at page 490.

2. Admittedly, the word "seamen" has differing meanings in differing federal statutes. As my colleagues recognize, what the seamen exemption means in this particular Act must be determined by looking to the policy of that provision in the light of its legislative history: Congress wrote that provision into the Act at the request of various maritime unions. We pointed out in Anderson v. Manhattan Lighterage Corp., 2 Cir., 148 F.2d 971, 973 that, at the legislative hearings, these unions "naturally * * opposed the application to them of general legislation [i. e., the Fair Labor Standards Act] which permitted an employer to include in wages the cost of facilities furnished to his employees",[1] since by other statutes seamen "generally must be furnished food and quarters free of charge."[2] As "scow captains" are not within those other statutes conferring those benefits on seamen, I think they were not intended to be covered by the seamen exemption in the F.L.S.A.

9. Knudsen v. Lee & Simmons, 2 Cir., 163 F.2d 95; McCarthy v. Wright & Cobb Lighterage Co., 2 Cir., 163 F.2d 92; Anderson v. Manhattan Lighterage Corp., 2 Cir., 148 F.2d 971, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428.

10. See note 3, supra.

1. We cited Joint Hearings Before Sen. Comm. on Education and Labor and House Comm. on Labor on S. 2475 and H.R. 7200, 75th Cong., 1st Sess., pp. 548–549.

2. We cited 46 U.S.C.A. §§ 80, 564, 713.